**Bette P. JABLON and Jacob C. Jablon, Individually and on behalf of all other persons similarly situated**

**v.**

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

**Civ. No. K-74-739.**

United States District Court,
D. Maryland.

July 28, 1975.

Arnold Jablon, Jablon and Jablon, Baltimore, Md., Kathleen W. Peratis, American Civil Liberties Union Foundation, New York City, for plaintiff.

William Z. Elliott, Social Security Administration, Baltimore, Md., Jervis S. Finney, U. S. Atty., John W. Sheldon, Asst. U. S. Atty., Baltimore, Md., for defendant.

Before WINTER, Circuit Judge, and KAUFMAN and BLAIR, District Judges.

FRANK A. KÁUFMAN, District Judge.

Plaintiffs' Jacob and Bette Jablon, husband and wife, have instituted the within proceeding challenging the provisions of 42 U.S.C. § 402(c)(1)(C)[1] as repugnant to the Due Process Clause of the Fifth Amendment to the federal Constitution.[2]

Plaintiffs seek injunctive and declaratory relief against the continued application of 42 U.S.C. § 402(c)(1)(C) in such a manner as to deny Jacob Jablon a husband's insurance benefits, and also seek by way of damages such benefits, apparently dating from July 1973, which Jacob would have received but for the operation of that section. Plaintiffs do not seek any retroactive benefits or damages on behalf of anyone other than the named plaintiffs, but do seek, on behalf of the named plaintiffs and the members of a proposed Federal Civil Rule 23(b)(2) class, injunctive and declaratory relief.[3]

Defendant has moved to dismiss, or in the alternative for summary judgment, based upon the administrative record herein. Plaintiffs have filed a cross-motion for summary judgment. There are seemingly no controverted facts herein, but rather only legal issues which are appropriately ripe for determination within the above-described summary judgment context.[4]

## JURISDICTION

◼ Jurisdiction was initially asserted pursuant to 28 U.S.C. § 1331. However, the clear holding by the Supreme Court in *Weinberger v. Salfi,* —— U.S. ——, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), that 42 U.S.C. § 405(h) bars § 1331 jurisdiction, negates plaintiffs' § 1331 jurisdictional claim. However, *Salfi* teaches, and the Government has formally conceded in the light of *Salfi,* that jurisdiction is present in a case like this pursuant to 42 U.S.C. § 405(g) provided there has been an exhaustion of administrative remedies by a plaintiff and a final decision by the Secretary upon that plaintiff's claim. Accordingly, since Jacob Jablon has concededly exhausted his administrative remedies and the Secretary has made a final adverse decision as to his claim, jurisdiction is

---

1. The text of that statute is reproduced *infra* at n. 7 of this opinion.

2. The Fifth Amendment imposes upon the federal Government the same equal protection obligations as are imposed upon the states by the Fourteenth Amendment. *See Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514, 519 n. 2 (1975).

3. Plaintiffs initially claimed attorneys' fees but have not since, in written or oral argument, alluded thereto. Accordingly, this Court treats that claim as abandoned. As to attorneys' fees generally, *see Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

4. After this case was originally argued and submitted on February 14, 1975, this Court advised counsel that it would await the filing by the Supreme Court of its opinion in *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). After that opinion was handed down on March 19, 1975, counsel herein, in response to this Court's invitation, filed further legal memoranda. Thereafter, in the wake of *Weinberger v. Salfi,* —— U.S. ——, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), counsel were offered the opportunity to be heard on the issues of jurisdiction, class action and three-judge Court. However, counsel were able, as noted in the body of this opinion *infra,* to resolve the first two issues by stipulation; as to the third issue, additional comments with regard to whether this three-judge Court should dissolve itself have been submitted.

present as to Jacob Jablon's claim. *Weinberger v. Salfi, supra* at ——, 95 S. Ct. 2457; *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), in which, as Mr. Justice Rehnquist wrote in *Salfi, supra* at —— n. 10, 95 S.Ct. at 2468, section 405(g) jurisdiction was similarly present, noting:

> * * * In that case the Secretary stipulated that exhaustion would have been futile, and he did not make any contentions that Wiesenfeld had not complied with the requirements of § 405(g). * * *

Whether jurisdiction is present in this case as to Bette Jablon's claims under §§ 1331 or 405(g) or otherwise presents a question which need not be explored herein in view of this Court's conclusion, stated *infra* at p. 125 of this opinion, that there exists no need herein to reach Bette's claims upon the merits.

### THREE–JUDGE COURT

■ The Government initially opposed formation of the within three-judge Court pursuant to 28 U.S.C. §§ 2282, 2284 on the basis that no "substantial" federal question, as that term has been defined by such cases as *Goosby v. Osser,* 409 U.S. 512, 518–19, 93 S. Ct. 854, 35 L.Ed.2d 36 (1973), has been presented. The Supreme Court's recent opinion in *Weinberger v. Wiesenfeld, supra,* and this Court's within disposition of the merits of the substantive issue raised herein, require a clear, negative answer to that particular argument. However, the Government has also opposed formation of a three-judge Court on the ground that injunctive relief cannot properly issue inasmuch as plaintiffs' quests for relief are in essence only for damage and declaratory relief, and thus that the within action is not one to restrain the operation of a federal statute as is required by 28 U.S.C. § 2282. *See Flemming v. Nestor,* 363 U.S. 603, 606–07, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). While the Jablons have unequivocally stated a request for in-

junctive relief against further enforcement of the provisions of section 402(c)(1)(C), that government position may nevertheless well be correct in the light of Mr. Justice Rehnquist's comments in *Salfi, supra* at —— n. 8, 95 S. Ct. at 2466, that the judicial review provisions of the Social Security Act which alone conferred federal jurisdiction in that case do not contain any

> * * * suggestion that a reviewing court is empowered to enter an injunctive decree whose operation reaches beyond the particular applicants before the court. In view of our dispositions of the class action and constitutional issues in this case, the only significance of this problem goes to our own jurisdiction. If a § 405(g) court is not empowered to enjoin the operation of a federal statute, then a three-judge District Court was not required to hear this case, 28 U.S.C. § 2282, and we are without jurisdiction under 28 U.S.C. § 1253. However, whether or not the three-judge court was properly convened, that court did hold a federal statute unconstitutional in a civil action to which a federal agency and officers are parties. We thus have direct appellate jurisdiction under 28 U.S.C. § 1252. *McLucas v. DeChamplain,* [421 U.S. 21, 95 S.Ct. 1365 at 1372, 43 L.Ed.2d 699] (1975).

Herein, the only relief granted runs in favor of Jacob Jablon and is stated, in accordance with the above-quoted views expressed by Mr. Justice Rehnquist, solely in terms of a reversal of the Secretary's adverse final decision as to Jacob's claim and a remand to him directing him to grant Jacob Jablon's claim. Thus, since this Court has determined not to grant any injunctive relief herein, it could seemingly dissolve itself and permit this case to go forward as a single judge case. However, since all three judges of this Court have devoted a great deal of time to this case and are in complete accord as to its disposition— since, if this three-judge Court were dissolved, the writer of this opinion, as the

judge to whom this case was originally assigned and who called for the convening of the three-judge Court, would be the single District Court judge handling this case and would file an opinion identical in all respects with this opinion—and since in any event the holding herein on the merits of the constitutional invalidity of a federal statute will seemingly confer direct appellate jurisdiction upon the Supreme Court regardless of whether this case is determined in this District Court by a single judge or by a statutory three-judge Court, this three-judge Court has determined not to dissolve itself.

### FACTS

The facts, stipulated by the parties, disclose that the named plaintiffs, Jacob C. Jablon and Bette P. Jablon, are legally married; that Jacob Jablon was born on December 8, 1908; and that Bette Jablon was born on August 9, 1910. Bette Jablon filed an application for retirement insurance benefits on June 8, 1973, and became entitled to receive the same beginning with the month of July 1973. Jacob Jablon, not otherwise entitled to receive any old-age or disability insurance benefits, filed an application for husband's insurance benefits pursuant to 42 U.S.C. § 402(c).[5] Jacob's said application was initially denied on July 5, 1973 and denied upon reconsideration on August 16, 1973, for the reason that Jacob did not receive at least one-half of his support from his wife. Jacob at first requested an administrative hearing, but then waived a formal hearing because he had no additional evidence to present. The administrative law judge held that Jacob was not entitled to "husband's insurance benefits" because Jacob did not receive at least one-half of his support from his wife in accordance with 42 U.S.C. § 402(c)(1)(C) and regulations promulgated pursuant thereto.[6] Thereafter, noting Jacob's admission that he was not receiving at least one-half of his support from Bette, the Appeals Council of the Social Security Administration affirmed the administrative law judge's decision and adopted it as the final decision of the Secretary of HEW. The parties have expressly stipulated that:

> Jacob C. Jablon has exhausted the administrative remedies available to him. The decision of the Secretary is supported by substantial evidence and, therefore, the constitutional claim for benefits is now ripe for judicial review.

### SUBSTANTIVE MERITS

Pursuant to the provisions of 42 U.S. C. §§ 402(b) and (c),[7] both male and

---

5. Plaintiffs have alleged that Bette Jablon "has worked for many years as a bookkeeper, an office manager, and a library aide" and that "[s]he is an insured individual under the Social Security Act"; and also that Jacob Jablon was employed by the federal Government and was not an insured individual under the Social Security Act. Those alleged facts are seemingly not disputed herein.

6. See 5 C.F.R. § 404.350 (1974).

7. Those statutes provide, in pertinent part:

    *Wife's insurance benefits*
    (b)(1) The wife (as defined in section 416(b) of this title) and every divorced wife (as defined in section 416(d) of this title) of an individual entitled to old-age or disability insurance benefits, if such wife or such divorced wife—

    (A) has filed application for wife's insurance benefits,
    (B) has attained age 62 or (in the case of a wife) has in her care (individually or jointly with such individual) at the time of filing such application a child entitled to a child's insurance benefit on the basis of the wages and self-employment income of such individual,
    (C) in the case of a divorced wife, is not married, and
    (D) is not entitled to old-age or disability insurance benefits, or is entitled to old-age or disability insurance benefits based on a primary insurance amount which is less than one-half of the primary insurance amount of such individual,
    shall (subject to subsection (s) of this section) be entitled to a wife's insurance benefit * * *.
    *     *     *     *     *

female spouses of individuals seeking old-age or disability insurance benefits under Social Security law may, under certain enumerated circumstances, be entitled to receive benefits payable to them related to their spouses' past earnings. Those benefits are sometimes hereinafter referred to as "spousal benefits". While in most respects male and female spouses are made eligible for such spousal benefits on identical terms, a male spouse must, in accordance with the terms of section 402(c)(1)(C), demonstrate that he "was receiving at least one-half of his support" from his wage earning wife at the time his wife became eligible for old-age or disability insurance benefits,[8] while a female spouse need in no case prove such dependency on her part. Accordingly, a 62 year old female who is not covered by Social Security or who, if she is so covered, receives an insurance benefit based upon a primary insurance amount less than half of that upon which her male spouse is entitled to receive benefits [9] may nevertheless receive a spousal benefit regardless of any other income sources she might have, even if the same would render her entirely nondependent upon her spouse. A 62 year old male who is not covered by Social Security or who is entitled to insurance benefits based upon a primary insurance amount less than one-half that upon which his female spouse is entitled to receive benefits [10] may under no circumstances receive such a spousal benefit as long as he provides more than one-half of his own support. Plaintiffs argue that section 402(c)(1)(C) effects a "double-edged" sex discrimination in violation of constitutional equal protection norms in that that section (1) discriminates against a female wage earner because it makes her Social Security contributions worth less to her husband and to her "family unit" than the contributions of a similarly situated male, and that it (2) discriminates against a nondependent male because it grants to him less benefits than to a similarly situated female. Bette Jablon claims under (1). Jacob Jablon claims under (2).

## CLASS ACTION ASPECTS

Plaintiffs originally sought to represent a class composed of "all past, present and future husbands of old age benefits recipients whose husbands are entitled to Social Security benefits" but for the dependency requirements of 42 U.S.C. § 402(c)(1)(C), and of "all past, present and future recipients of old age benefits under the Social Security Act whose husbands are entitled to benefits

*Husband's insurance benefits*

(c)(1) The husband (as defined in section 416(f) of this title) of an individual entitled to old-age or disability insurance benefits, if such husband—

(A) has filed application for husband's insurance benefits,

(B) has attained age 62,

(C) *was receiving at least one-half of his support*, as determined in accordance with regulations prescribed by the Secretary, from such individual—

(i) if she had a period of disability which did not end prior to the month in which she became entitled to old-age or disability insurance benefits, at the beginning of such period or at the time she became entitled to such benefits, or

(ii) if she did not have such a period of disability, at the time she became entitled to such benefits,

and filed proof of such support within two years after the month in which she filed

application with respect to such period of disability or after the month in which she became entitled to such benefits, as the case may be, or, if she did not have such a period, two years after the month in which she became entitled to such benefits, and

(D) is not entitled to old-age or disability insurance benefits, or is entitled to old-age or disability insurance benefits based on a primary insurance amount which is less than one-half of the primary insurance amount of his wife,

shall be entitled to a husband's insurance benefit * * *.

[Emphasis supplied.]

8. Except under circumstances described in 42 U.S.C. § 402(c)(1)(C)(i). *See* n. 7 *supra.*

9. *See* 42 U.S.C. § 402(b)(1)(D).

10. *See* 42 U.S.C. § 402(c)(1)(D).

under 42 U.S.C. § 402(c)" but for the dependency requirements of section 402(c)(1)(C). In essence therefore the Jablons originally sought a class composed of two sub-parts, a husband subclass and a wife sub-class.

However, after the Supreme Court filed its opinion in *Salfi*, *supra*, the Jablons withdrew their class action requests. In *Salfi*, the Supreme Court held that the jurisdiction of a federal District Court to review under 42 U.S.C. § 405(g) and (h) a final decision of the Secretary adverse to a named claimant's claim extends only to those claimants and "not as to the unnamed members of the class." *Salfi*, *supra* at ——, 95 S.Ct. at 2466 (footnote omitted). Thus, Jacob Jablon's class quest must fail. If Bette Jablon is without standing to maintain this suit, Bette could not represent the proposed class. *See, e. g., Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970). Once again, this Court's conclusion that there is no need, in view of this Court's determination as to Jacob's claims, to reach the merits of the constitutional claims Bette poses herein, eliminates the need further to consider Bette's individual and class action contentions.[11]

## STANDING ISSUES

Several threshold issues of standing have been raised. Defendant, characterizing Bette Jablon's complaint as a "generalized grievance, shared with all taxpayers, concerning the distribution of tax money", vigorously challenges Bette's standing to attack the absence of payments made to her husband. Defendant has, moreover, seemingly challenged the standing of Jacob Jablon to assert the unconstitutionality of section 402(c)(1)(C) on the grounds that Jacob is seeking to raise the alleged constitutional rights of his wife, and that

Jacob himself has not suffered a sufficient injury of his own to confer upon him such standing. That latter position on the part of defendant is without merit. The pecuniary disadvantage to which Jacob Jablon has been subjected by section 402(c)(1)(C) is sufficiently significant to give Jacob the requisite "'personal stake in the outcome of the [within] controversy'" which has been required by such cases as *Sierra Club v. Morton*, 405 U.S. 727, 732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972), quoting from *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Moreover, such injury stems directly from, and is inextricably intertwined with, the operation of section 402(c)(1)(C), and thus confers upon Jacob's standing to challenge the particular provisions of that statute. *See, e. g., Linda R. S. v. Richard D.*, 410 U.S. 614, 617–18, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). Additionally, Mr. Justice Brennan's analysis[12] in *Weinberger v. Wiesenfeld*, *supra*, would seemingly indicate that Jacob has standing, in the process of challenging the rationality of the sex-based classification in question, to point to the inequities which that classification works not only upon himself and similarly situated males, but also upon female wage earners.

In arguing that Bette Jablon lacks standing to maintain this suit, the Government has characterized Bette's within claims as a garden variety "taxpayer's suit". *See, e. g., Schlesinger v. Reservists Committee to Stop the War*, 418 U. S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). That characterization is predicated upon the rationale that because Bette has no "right" to any particular application of her Social Security contributions,[13] she has suffered no cognizable "injury" by the denial of spousal benefits to Jacob. Plaintiffs assert that

---

11. *See* the discussion *infra* at pp. 124–125 of this opinion.

12. *See* the more detailed discussion at pp. 128–129 *infra*.

13. *Cf.* the discussion at pp. 127–128 *infra*.

Bette has a "right" to have her Social Security contributions distributed in a manner not based solely on considerations of gender, and further suggest that Bette's "injury" may be seen in the diminished benefits available to her "family unit".

In view of this Court's conclusion that Jacob has standing and in view of this Court's further conclusion that Jacob's attack upon the constitutionality of section 402(c)(1)(C) is meritorious, this Court need not resolve the standing issue as to Bette or reach the merits of the constitutional attack she mounts herein.[14]

## THE GOVERNMENT'S POSITION AND STANDARD OF REVIEW

The Government has at no time during the course of this litigation denied that 42 U.S.C. §§ 402(b) and (c) discriminate between male and female spouses of covered wage earners on the basis of sex and on that basis alone. The Government has, however, consistently maintained that such discrimination does not violate Fifth Amendment equal protection standards, reasoning that the presumption of dependency embodied in section 402(b) is rationally justified. The Government argues, alternatively, that only suspect classifications are impermissible in Social Security legislation because no plaintiff possesses a contractual right to any particular distribution of Social Security benefits; that the congressional intent underlying spousal benefits was to provide aid to "dependent" spouses only, and that the presumption of dependency accorded to a female spouse by section 402(b) is justified by current and historic labor practices and statistics; and that any preference accorded female spouses by the combination of section 402(b) and section 402(c)(1)(C) is constitutionally permissible as remedial legislation aimed at eradicating lingering vestiges of past economic discrimination against women. The Government has additionally taken the position that any sex discrimination inherent in section 402(c)(1)(C) is justified by the severe strain which would be placed upon the Social Security system by any broadening of the class of statutory beneficiaries currently enumerated in sections 402(b) and (c).

Much ink has been spilled in this case upon the question of what standard of review ought properly be applied in examining the sex-based classification given effect by section 402(c)(1)(C). The Government supports the challenged classification as " 'rationally based and free from invidious discrimination.' " *Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971), quoting from *Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Plaintiffs, on the other hand, point to the following standard set forth in *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971):

> * * * A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a *fair and substantial relation* to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, [40 S.Ct. 560, 561, 64 L.Ed. 989] (1920). * * * [Emphasis added.]

In describing the import of the equal protection test set forth in *Reed*, Judge Winter, in *Eslinger v. Thomas*, 476 F.2d 225, 230–31 (4th Cir. 1973), wrote:

> Thus *Reed*, in a case of invidious sex discrimination, prescribed as a test of validity the presence of a "fair and substantial" relation between the basis of the classification and the object of the classification. A classification based upon sex is less than suspect; a validating relationship must be more than minimal. What emerges is an "intermediate approach" be-

---

14. The separate challenges of the Jablons are set out at p. 123 *supra*.

tween rational basis and compelling interest as a test of validity under the equal protection clause. *Green v. Waterford Board of Education,* 473 F.2d 629 (2 Cir. 1973); *Wark v. Robbins,* 458 F.2d 1295, 1297 n. 4 (1 Cir. 1972); Gunther, The Supreme Court, 1971 Term. Foreward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1, 17 (1972). [Footnotes omitted.]

In the light of Mr. Justice Brennan's recent majority opinion in *Weinberger v. Wiesenfeld, supra,* a sex-based classification in the Social Security legislation must, at a minimum, be scrutinized under *Reed* standards. In that context, for reasons developed *infra,* the within classification cannot survive. Accordingly, it is not appropriate for this Court to determine whether sex-based classifications must additionally be able to withstand the strict judicial scrutiny traditionally applied to racial- and religious-based classifications, and thus be sustainable only if the Government can demonstrate that such classifications are required by compelling governmental interests which are not otherwise achieved.[15] That question is one which the Supreme Court has again recently found it unnecessary to decide. *See Stanton v. Stanton,* 421 U.S. 7, 95 S. Ct. 1373, 43 L.Ed.2d 688, 694 (1975).

### WEINBERGER v. WIESENFELD

Mr. Justice Brennan's reasoning in *Weinberger v. Wiesenfeld, supra,* would seem to compel the conclusion that the within classification is not rationally related to a legitimate governmental interest. In *Goldfarb v. Secretary,* 396 F. Supp. 308 (E.D.N.Y.1975) (three-judge Court); *Silbowitz v. Secretary,* 397 F.

Supp. 862 (S.D.Fla.1975); and *Coffin v. Secretary,* Civil No. 1890–73 (D.D.C. July 14, 1975) (three-judge Court), in each of which cases seemingly the identical issue posed herein was posed therein, section 402(c)(1)(C) was held unconstitutional on equal protection grounds upon the authority of *Wiesenfeld.*[16] In *Wiesenfeld,* the challenge was to the constitutionality of 42 U.S.C. § 402(g). Pursuant to that statute, the widow of a fully insured wage earner was made eligible for a "child's insurance benefit" in accordance with the terms of 42 U.S.C. § 402(d). No statutory provision was made for a similar benefit for a widower of a fully insured female wage earner when such a child was in his care. In affirming the decision of a three-judge Court holding such differential statutory treatment unconstitutional, Mr. Justice Brennan wrote (*supra,* 420 U.S. at 642, 95 S.Ct. at 1230, 43 L.Ed.2d at 521–22):

The gender-based distinction made by § 402(g) is indistinguishable from that invalidated in *Frontiero v. Richardson,* 411 U.S. 677 [93 S.Ct. 1764, 36 L.Ed.2d 583] (1973). Frontiero involved statutes which provided the wife of a male serviceman with dependents' benefits but not the husband of a servicewoman unless she proved that she supplied more than one-half of her husband's support. The Court held that the statutory scheme violated the right to equal protection secured by the Fifth Amendment. *Schlesinger v. Ballard,* 419 U. S. 498 [95 S.Ct. 572, 42 L.Ed.2d 60] (1975), explained: "In . . . *Frontiero* the challenged [classification] based on sex [was] premised on overbroad generalizations that could not be tolerated under the Constitu-

---

15. *See Geduldig v. Aiello,* 417 U.S. 484, 503, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974) (Brennan, J., dissenting); *Kahn v. Shevin,* 416 U.S. 351, 358–59, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974) (Brennan, J., dissenting); *Frontiero v. Richardson,* 411 U.S. 677, 682, 688, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (Brennan, J.) (plurality opinion).

16. In a separate opinion in *Goldfarb,* Judge Moore reluctantly concurred in the light of the Supreme Court's opinion in *Wiesenfeld* but set forth his concern in connection with the cost factors discussed *infra.*

tion. . . . [T]he assumption . . . was that female spouses of servicemen would normally be dependent upon their husbands, while male spouses of servicewomen would not." 419 U.S. at 507 [95 S.Ct. at 577]. A virtually identical "archaic and overbroad" generalization, id., at 508 [95 S.Ct. 572], "not . . . tolerated under the Constitution" underlies the distinction drawn by § 402(g), namely, that male workers' earnings are vital to the support of their families, while the earnings of female wage-earners do not significantly contribute to their families' support.[11]

11. See the observations in *Frontiero*, 411 U. S., at 689, n. 23, [93 S.Ct. 1764 at 1771], that in view of the large percentage of married women working (41.5% in 1971), the presumption of complete dependency of wives upon husbands has little relationship to present reality. In the same vein, *Taylor v. Louisiana*, 419 U.S. 522 [95 S.Ct. 692, 42 L.Ed.2d 690] (1975), observed that current statistics bely "the presumed role in the home" of contemporary women, 419 U.S., at 535, n. 17 [95 S.Ct. at 700].

In support of the sex-based discrimination effected by 42 U.S.C. § 402(g), the Government contended, as it contends herein, that Congress is not constitutionally required to provide similarly situated male and female individuals with the same benefits. In response to that argument, Mr. Justice Brennan wrote (at 646, 95 S.Ct. at 1232, 43 L. Ed.2d at 523–24):

Appellant relies for the first proposition primarily on *Flemming v. Nestor*, 363 U.S. 603 [80 S.Ct. 1367, 4 L. Ed.2d 1435] (1960). We held in Flemming that the interest of a covered employee in future social security benefits is "noncontractual," because "each worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent upon the degree to which he was called upon to support the system by taxation." 363 U.S., at 609–610 [80 S.Ct. 1367 at 1371, 1372]. The Government apparently contends that since benefits derived from the social security program do not correlate necessarily with contributions made to the program, a covered employee has no right whatever to be treated equally with other employees as regards the benefits which flow from his or her employment.

We do not see how the fact that social security benefits are "noncontractual" can sanction differential protection for covered employees which is solely gender-based. From the outset, social security old age, disability, and survivors' (OASDI) benefits have been "afforded as a matter of right, related to past participation in the productive processes of the country." Final Report of the Advisory Council on Social Security 17 (1938). It is true that social security benefits are not necessarily related directly to tax contributions, since the OASDI system is structured to provide benefits in part according to presumed need. For this reason, Flemming held that the position of a covered employee "cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on contractual payments." 363 U.S., at 610 [80 S.Ct. 1367, at 1372]. But the fact remains that the statutory right to benefits is directly related to years worked and amount earned by a covered employee, and not to the need of the beneficiaries directly. Since OASDI benefits do depend significantly upon the participation in the work force of a covered employee, and since only covered employees and not others are required to pay taxes toward the system, benefits must be distributed according to classifications which do not without sufficient justification differentiate among covered employees solely on the basis of sex.

[Footnotes omitted.]

Similarly, the Government's contention that the non-contractual nature of the Social Security benefits involved in this case distinguishes them from such compensation as the wage-related benefits

in *Frontiero* or pursuant to a private or governmental pension plan does not justify the sex-based discrimination complained of herein.

As previously noted, the government has herein contended that sections 402(b) and (c) were enacted to afford additional protection to beneficiaries in accord with their probable need, and that empirical data justifies a presumption of need as to women but not to men, and thus legitimates the sex-based discrimination inherent in section 402(c)(1)(C). Mr. Justice Brennan appears adequately to have answered that contention when, in response to a similar government contention in *Wiesenfeld,* he wrote (at 643, 95 S.Ct. at 1231, 43 L.Ed.2d at 522–23):

> Section 402(g) was added to the Social Security Act in 1939 as one of a large number of amendments designed to "afford more adequate protection to the family as a unit." H.R.Rep. No. 728, 76th Cong., 1st Sess., 7 (1939). Monthly benefits were provided to wives, children, widows, orphans, and surviving dependent parents of covered workers. Ibid. However, children of covered women workers were eligible for survivors' benefits only in limited circumstances, see n. 5, supra, and no benefits whatever were made available to husbands or widowers on the basis of their wives' covered employment.

> Underlying the 1939 scheme was the principle that "under a social-insurance plan, the primary purpose is to pay benefits in accordance with the *probable needs* of beneficiaries rather than to make payments to the estate of a deceased person regardless of whether or not he leaves dependents." H.R.Rep. No. 728, supra, at 7. (Emphasis supplied.) It was felt that "[t]he payment of these survivorship benefits and supplements for the wife of an annuitant are . . . in keeping with the principle of social insurance. . . ." Ibid. Thus, the framers of the Act legislated on the "then generally accepted presumption that a man is responsible for the support of his wife and child." Hoskins & Bixby, Women and Social Security —Law and Policy in Five Countries, Social Security Administration Research Report No. 42, 77 (1973).

Obviously, the notion that men are more likely than women to be the primary supporters of their spouses and children is not entirely without empirical support. See *Kahn v. Shevin,* 416 U.S. 351, 354 n. 7 [94 S.Ct. 1734, 1737, 40 L.Ed.2d 189] (1974). But such a gender-based generalization cannot suffice to justify the denigration of the efforts of women who do work and whose earnings contribute significantly to their families' support. [Footnotes omitted.]

The Government has sought to distinguish *Wiesenfeld* from the within case on the basis that the presumption that a male was not dependent was irrebuttable in that case, whereas it is open to Jacob Jablon to demonstrate that he is in fact dependent upon his wife for "at least one-half of his support".[17] That purported distinction is, for purposes of this litigation, a distinction without a difference. In *Wiesenfeld,* Mr. Justice Brennan specifically stated (at 645, 95 S.Ct. at 1232, 43 L.Ed.2d at 523):

> Section 402(g) clearly operates, as did the statutes invalidated by our judgment in *Frontiero,* to deprive women of protection for their families which men receive as a result of their employment. Indeed, the classification here is in some ways more pernicious. First, it was open to the servicewoman under the statutes invalidated in *Frontiero* to prove that her husband was in fact dependent upon her. Here, Stephen Wiesenfeld was not given the opportunity to show, as may well have been the case, that he was dependent upon his wife for his sup-

---

17. *See* 42 U.S.C. § 402(c)(1)(C).

port, or that, had his wife lived, she would have remained at work while he took over care of the child. Second, in this case social security taxes were deducted from Paula's salary during the years in which she worked. Thus, she not only failed to receive for her family the same protection which a similarly situated male worker would have received, but she also was deprived of a portion of her own earnings in order to contribute to the fund out of which benefits would be paid to others. Since the Constitution forbids the gender-based differentiation premised upon assumptions as to dependency made in the statutes before us in *Frontiero,* the Constitution also forbids the gender-based differentiation that results in the efforts of women workers required to pay social security taxes producing less protection for their families than is produced by the efforts of men.

Assuming *arguendo* that the dependency provisions of section 402(c)(1)(C) are less "pernicious" than the irrebuttable presumption of nondependence invalidated in *Wiesenfeld,* it would appear that the validity of those provisions contained in section 402(c)(1)(C) was at the least thrown strongly into doubt by the Court's earlier opinion in *Frontiero v. Richardson,* 411 U.S 677, 688–89, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), relied upon in *Wiesenfeld,* and may not survive under the rationale of *Wiesenfeld* itself.

The Government has contended in this case that section 402(c)(1)(C) was enacted as remedial legislation aimed at compensating women for past discriminations suffered by women in the economic marketplace, and has directed this Court's attention to several cases which have sustained similarly-motived legislation as constitutional.[18]

Plaintiffs, on the other hand, argue that section 402(c)(1)(C) was enacted upon the basis of the stereotypic, male chauvinistic notion that the normal role of a man was that of breadwinner, while that of a woman was that of stay-at-home dependent. In *Wiesenfeld, supra;* Mr. Justice Brennan stated (at 648, 95 S.Ct. at 1233, 43 L.Ed.2d at 524–25):

The Government seeks to characterize the classification here as one reasonably designed to compensate women beneficiaries as a group for the economic difficulties which still confront women who seek to support themselves and their families. The Court held in *Kahn v. Shevin, supra,* 416 U.S. at 355 [94 S.Ct. at 1734], that a statute "reasonably designed to further a state policy of cushioning the financial impact of spousal loss upon that sex for which that loss imposes a disproportionately heavy burden" can survive an equal protection attack. See also *Schlesinger v. Ballard, supra.* But the mere recitation of a benign, compensatory purpose is not an automatic shield which protects against any inquiry into the actual purposes underlying a statutory scheme.[16]

\* \* \*

16. This Court need not in equal protection cases accept at face value assertions of legislative purposes, when an examination of the legislative scheme and its history demonstrates that the asserted purpose could not have been a goal of the legislation. See *Eisenstadt v. Baird,* 405 U.S. 438 [92 S.Ct. 1029, 31 L.Ed.2d 349] (1972); *Jiminez v. Weinberger,* 417 U.S. 628, 634 [94 S.Ct. 2496, 2500, 41 L.Ed.2d 363] (1974); *U. S. Department of Agriculture v. Moreno,* 413 U.S. 528, 536–37 [93 S.Ct. 2821, 2826–2827, 37 L.Ed.2d 782] (1973).

Further, with regard to section 402(c)(1)(C), this Court has not been referred to any legislative history which suggests that that section had the broad

18. *See, e. g., Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974) (Florida property tax exemption extended to widows but not widowers); *Gruenwald v. Gardner,* 390 F.2d 591 (2d Cir.), *cert. denied sub nom. Gruenwald v. Cohen,* 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968) (women accorded more favorable treatment than men in computation of social security benefits); *Kohr v. Weinberger,* 378 F.Supp. 1299 (E. D.Pa.1974) (three-judge Court) (same type of contention as presented in *Gruenwald*).

remedial purpose the Government seeks to ascribe to it. Not only is such a purpose not self-evident from a reading of the statute's text, but section 402(c)(1)(C) seemingly evinces only a congressional intent of aiding dependent spouses of both sexes. Accordingly, the sex-based classification effected by section 402(c)(1)(C) cannot be justified on a remedial basis.

█ Moreover, even assuming, *arguendo,* that section 402(c)(1)(C) was enacted to help upgrade the economic position of women, it does not appear that that statute is "reasonably designed to further" that purpose. Indeed, the opposite would appear true. Section 402(c)(1)(C) bestows its benefits upon two seemingly narrow classes of women: first, those women who, although not covered by Social Security benefits, nonetheless provide more than one-half of their own support; and second, those who, although eligible for Social Security benefits based upon a primary insurance amount less than one-half of that of their husband, provide more than one-half of their own support. On the other hand, the statute has an obvious even if perhaps indirect rather than direct adverse impact upon the female wage earner whose spouse provides more than one-half of his own support and who is either not covered by Social Security or who receives Social Security benefits based upon a primary amount less than one-half that of his wife. Such a female earner's earnings are, solely on the basis of her sex, made less valuable to her family than the earnings of a similarly situated male.[19]

In sum, the words of Mr. Justice Brennan in *Frontiero, supra,* 411 U.S. at 689 n. 22, 93 S.Ct. at 1771, might well have been used in describing section 402(c)(1)(C):

It should be noted that these statutes are not in any sense designed to rectify the effects of past discrimination against women. See *Gruenwald v. Gardner,* 390 F.2d 591 (CA 2), cert. denied, 393 U.S. 982 [89 S.Ct. 456, 21 L.Ed.2d 445] (1968); cf. *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409 [88 S.Ct. 2186, 20 L.Ed.2d 1189] (1968); *South Carolina v. Katzenbach,* 383 U. S. 301 [86 S.Ct. 803, 15 L.Ed.2d 769] (1966). On the contrary, these statutes seize upon a group—women—who have historically suffered discrimination in employment, and rely on the effects of this past discrimination as a justification for heaping on additional economic disadvantages. Cf. *Gaston County v. United States,* 395 U.S. 285, 296–297 [89 S.Ct. 1720, 1725–1726, 23 L.Ed.2d 309] (1969).

█ The Government has emphasized that the increased costs which will apparently flow from an enlargement of the class of beneficiaries under 42 U.S. C. § 402(c)(1)(C) to include persons such as Jacob Jablon,[20] justify any existing discrimination there may be. *Cf. Geduldig v. Aiello,* 417 U.S. 484, 492–97, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974). *See also* Mr. Justice Brennan's dissenting opinion therein at 417 U.S. *supra* at 503–05, 94 S.Ct. 2485. *And see* further the seeming absence of any reliance, one way or the other, upon increased costs in the majority, concurring and/or dissenting opinions in *Wiesenfeld, supra; United States Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Frontiero v. Richardson, supra;* and *New Jersey Welfare Rights Organization v. Cahill,*

19. The discrimination which section 402(c)(1)(C) works against the female breadwinner readily distinguishes this case from *Norton v. Weinberger,* 390 F.Supp. 1084 (D.Md.1975), *appeal pending,* in which a divided three-judge panel of this Court upheld, in the face of an equal protection challenge, the provisions of 42 U.S.C. § 416(h)(3)(C)(ii), pursuant to which the legitimate children of insured individuals were accorded a statutory presumption of dependency not available to certain classes of illegitimate children. *But see Lucas v. Secretary,* 390 F.Supp. 1310 (D.R.I.1975) (Pettine, J.).

20. *See* the discussion *infra* at p. 132.

411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973). That government contention would not appear to be supported by *Geduldig v. Aiello, supra.* In *Geduldig,* the Supreme Court held that the decision by California not to include the risk of disability from normal pregnancy within its disability insurance system was not violative of equal protection norms. In so holding, Mr. Justice Stewart stated (417 U.S. at 496, 94 S.Ct. at 2491):

> *The State has a legitimate interest in maintaining the self-supporting nature of its insurance program.* Similarly, it has an interest in distributing the available resources in such a way as to keep benefit payments at an adequate level for disabilities that are covered, rather than to cover all disabilities inadequately. Finally, *California has a legitimate concern in maintaining the contribution rate at a level that will not unduly burden participating employees,* particularly low-income employees who may be most in need of the disability insurance.

> *These policies provide an objective and wholly noninvidious basis for the State's decision not to create a more comprehensive insurance program than it has.* * * * [Emphasis added.]

However, Mr. Justice Stewart also wrote in *Geduldig* (at 496–97, 94 S.Ct. at 2492):

> * * * There is no evidence in the record that the selection of the risks insured by the program worked to discriminate against any definable group or class in terms of the aggregate risk protection derived by that group or class from the program.[20] There is

20. The dissenting opinion to the contrary, this case is thus a far cry from cases like *Reed v. Reed,* 404 U.S. 71, [92 S.Ct. 251, 30 L.Ed.2d 225], and *Frontiero v. Richardson,* 411 U.S. 677 [93 S.Ct. 1764, 36 L.Ed.2d 583], involving discrimination based upon gender as such. The California insurance program does not exclude anyone from benefit eligibility because of gender but merely removes one physical condition—pregnancy—from the list of compensable disabilities. While it is true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification like those considered in *Reed,* supra, and *Frontiero,* supra. Normal pregnancy is an objectively identifiable physical condition with unique characteristics. Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.

The lack of identity between the excluded disability and gender as such under this insurance program becomes clear upon the most cursory analysis. The program divides potential recipients into two groups —pregnant woman and non-pregnant persons. While the first group is exclusively female, the second includes members of both sexes. The fiscal and actuarial benefits of the program thus accrue to members of both sexes.

> no risk from which men are protected and women are not. Likewise, there is no risk from which women are protected and men are not. [Footnote 21 omitted.]

While *Geduldig* suggests that a state's interest in maintaining the self-supporting character of an insurance program may sustain a legislative classification which does not accord different benefits to men and women based on gender alone, that case would not appear to teach that such an interest may sustain a classification which has a disparate effect upon men and women solely because of their sex any more than it could sustain a classification denying benefits solely on the basis of race or religion.

## REMEDY

The Social Security Act contains a broad separability clause. 42 U.S.C. § 1303 provides:

> If any provision of this chapter, or the application thereof to any person or circumstance, is held invalid, the remainder of the chapter, and the application of such provision to other

persons or circumstances shall not be affected thereby.

That section would of course tend to divert this Court from choosing the first type of remedy suggested in *Welsh v. United States*, 398 U.S. 333, 361, 90 S. Ct. 1792, 1807, 26 L.Ed.2d 308 (1970), in which Mr. Justice Harlan, concurring, wrote:

> Where a statute is defective because of underinclusion there exists two remedial alternatives: a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion. Cf. *Skinner v. Oklahoma*, 316 U.S. 535 [62 S.Ct. 1110, 86 L.Ed. 1655] (1942); *Iowa-Des Moines National Bank v. Bennett*, 284 U.S. 239 [52 S.Ct. 133, 76 L.Ed. 265] (1931).[14]

14. See *Skinner v. Oklahoma*, where Mr. Justice Douglas, in an opinion holding infirm under the Equal Protection Clause a state statute that required sterilization of habitual thieves who perpetrated larcenies but not those who engaged in embezzlement, noted the alternative courses of extending the statute to cover the excluded class of not applying it to the wrongfully included group. The Court declined to speculate which alternative the State would prefer to adopt and simply reversed the judgment.

See also *Stanton v. Stanton*, 421 U.S. 7, 95 S.Ct. 1373, 1379, 43 L.Ed.2d 688, 697 (1975), leaving the matter "to be resolved by the Utah courts on remand"; *Moritz v. Commissioner of Internal Revenue*, 469 F.2d 466, 470 (10th Cir. 1972), *cert. denied*, 412 U.S. 906, 93 S.

21. Mr. Justice Brennan stated (411 U.S. *supra* at 691 n. 25, 93 S.Ct. at 1772):
> * * * Our conclusion in no wise invalidates the statutory schemes except insofar as they require a female member to prove the dependency of her spouse. * * *

22. Section 1304 of Title 42 provides:
> The right to alter, amend, or repeal any provision of this chapter is reserved to the Congress.

Ct. 2291, 36 L.Ed.2d 971 (1973), in which the Tenth Circuit extended the coverage of the statute in question.

The relief decreed in *Frontiero v. Richardson*[21] would also seemingly point this Court toward requiring the abandonment as to Jacob Jablon of any one-half dependency requirement as to males. On the other hand, the affidavit of one Lawrence Alpern, Deputy Chief Actuary for the Office of the Actuary of the Social Security Administration, filed in this case on May 5, 1975, indicates that elimination of the challenged one-half support requirement for Jacob Jablon and all males similarly situated would cost, for the full calendar year 1976, some 411 million dollars. The Government has strongly suggested that such cost would impair the stability of the Social Security fund. It should be noted, however, that during oral argument government counsel stated to this Court that the administrative costs of requiring both male and female spouses to establish actual one-half support dependency could amount to as much as one billion dollars. Accordingly, on balance, it would appear preferable, in the light of this Court's conclusion that 42 U.S.C. § 402(c)(1)(C) offends constitutional equal protection norms, that this Court require, as did the Courts which have previously held section 402(c)(1)(C) unconstitutional, *see Coffin, supra; Silbowitz, supra*, at 871; *Goldfarb, supra*, at 309, that the Social Security Act be interpreted and enforced without reference to the dependency requirement.[22] Accordingly, the Secretary's denial of Jacob Jablon's claim is

The Government has called this Court's attention to that statute, and maintained that this Court thereby lacks power to enlarge the class of benefit recipients created by 42 U.S.C. §§ 402(b) and (c). While acknowledging that this Court's proper role is not a legislative one, this Court notes that the Supreme Court's decision in *Wiesenfeld, supra*, reaffirms the power of a federal Court to remedy an unconstitutional discrimination in federal legislation. *See also Frontiero v. Richardson, supra*.

hereby reversed and the within case is hereby remanded to the Secretary with the direction to process and grant that claim in the light of this opinion.