Sidney J. WEBB, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant.

No. C 80–1667 RPA.

United States District Court, N. D. California.

March 13, 1981.

Sidney J. Webb in pro. per.

William T. McGivern, Jr., Asst. U. S. Atty., San Francisco, Cal., for defendant.

## OPINION AND ORDER

AGUILAR, District Judge.

FACTS:

Plaintiff Sidney Webb filed an application for husband's insurance benefits under Title II of the Social Security Act (Act) on September 21, 1977, a month after his wife applied for her retirement benefits. On October 31, 1977, plaintiff was notified that he had been found entitled to husband's benefits as of December 1977, in the amount of $42.90 per month under § 202(c) of the Act, 42 U.S.C. § 402(c), December 1977 being the first month in which plaintiff met all criteria of eligibility. (On December 2, 1977, plaintiff would attain 62 years of age and meet the final requirement for obtaining his husband's benefits).

On December 20, 1977, Congress amended the Social Security Act by enacting a "pension offset" provision, § 202(c)(2)(A), 42 U.S.C. § 402(c)(2)(A) (enacted by Pub.L. No.

95–216, § 334(b)(2)), which was to take effect "for months beginning with the month in which this Act is enacted, on the basis of applications filed in or after the month in which this Act is enacted," § 334(f), Pub.L. No. 95–216. Thus, the amendment took effect in December of 1977. Among other changes, the amendment added a provision that the monthly benefit payable to a person receiving husband's insurance benefits must be reduced by an amount equal to the amount of any monthly benefit payable to the husband based upon his earnings while in government service. Plaintiff was employed by the Public Utilities Commission for the State of California until March 31, 1977, and began receiving a state government pension monthly upon the termination of his employment.

Based upon its interpretation of this pension offset provision, in September of 1978, the Social Security Administration notified plaintiff that he was no longer entitled to husband's benefits, and that he had been overpaid $394.50 in benefits for the period December 1977, to August 1978. Plaintiff thereafter requested reconsideration of the decision which found him subject to the offset provision and in receipt of $394.50 in overpaid benefits, claiming that as he had filed before December 1, 1977, the offset provision should not apply to his benefits. In a reconsideration decision issued March 26, 1979, the initial determination was affirmed. According to the Administration, an application for monthly benefits filed before the first month in which the claimant meets all conditions of entitlement for such benefits is not deemed a valid application until the month when all such conditions have been satisfied.

Plaintiff then requested and received a hearing before an administrative law judge (ALJ) on his claim. At the hearing, the ALJ examined the following issues: (1) whether plaintiff was overpaid husband's insurance benefits (which depended on whether plaintiff was entitled to husband's insurance benefits), and (2) if plaintiff was overpaid, whether the Social Security Administration was entitled to recover the overpayment. The ALJ found that plain-

tiff was not entitled to husband's insurance benefits and did not qualify for any of the Act's exceptions to the offset provision.

The ALJ also found that although plaintiff was overpaid $394.50 in benefits, the plaintiff had "relied on his award of benefits, constituting erroneous information from an official source from the Social Security Administration," and so was deemed without fault. Adjustment or recovery was therefore waived.

Plaintiff requested a review of the ALJ's decision, which was subsequently affirmed by the Appeals Council. Plaintiff, having exhausted his administrative remedies, brings this action for review of an adverse final decision of the Secretary of Health and Human Services (the Secretary) pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

DISCUSSION:

The Social Security Amendments of 1977, Pub.L. 95–216, amended the existing Social Security Act (42 U.S.C. §§ 301, et seq.) to among other things create an offset provision which requires that husband's insurance benefits "shall be reduced (but not below zero) by an amount equal to the amount of any monthly periodic benefit payable to such husband for such month which is based upon his earnings while in the service of the Federal Government or any State ... if, on the last day he was employed by such entity, such service did not constitute 'employment' as defined in section 410 of this title." Pub.L. No. 95–216, § 334(b)(2)(A), 42 U.S.C. § 402(c)(2)(A). As noted, the amendment applies to monthly insurance benefits "for months beginning with the month in which this Act is enacted, on the basis of applications filed in or after the month in which this Act is enacted." Pub.L. 95–216, § 334(f). The month of enactment of Public Law 95–216 was December of 1977. Plaintiff asserts that his application was filed prior to December 1977, and that the December amendments therefore do not apply to reduce his benefits. The Secretary contends that plaintiff's application must be deemed filed in December

of 1977. This contention is based upon 42 U.S.C. § 402(j)(2), which provides that an application for monthly benefits filed prior to the time an applicant meets all requirements for eligibility shall be deemed a valid application and shall have "[been] deemed to have been filed" when all requirements are satisfied.

Plaintiff first met all criteria for eligibility when he became sixty-two in December 1977. Assuming plaintiff's application was "filed" in December, he would therefore be subject to the pension offset provision enacted in § 202(c) of the Social Security Act, 42 U.S.C. § 402(c)(2)(A). However, there is an important exception contained in the Amendments of 1977 to the operation of the various offset provisions. Section 334(g)(1) of Pub.L. 95–216 provides:

(g)(1) The amendments made by the preceding provisions of this section shall not apply with respect to any monthly insurance benefit payable, under subsection (b), (c), (e), (f), or (g) (as the case may be) of § 202 of the Social Security Act, to an individual—

(A) to whom there is payable for any month within the 60-month period beginning with the month in which this Act is enacted (or who is eligible in any such month) for a monthly periodic benefit (within the meaning of such provisions) based upon such individual's earnings while in the service of the Federal Government or any State (or political subdivision thereof, as defined in section 218(b)(2) of the Social Security Act); and

(B) who at the time of application for or initial entitlement to such monthly insurance benefit under such subsection (b), (c), (e), (f), or (g) meets the requirements of that subsection as it was in effect and being administered in January 1977.

This exception means that if an individual is eligible or is actually receiving a federal or state government pension in December 1977, through December 1982, and if the individual meets the requirements of the applicable subsection of section 202 of the Act as it existed and was administered in January of 1977, the offset provision will not be applicable.

The husband's insurance benefits plaintiff seeks to obtain are provided for by subsection (c) of § 202 of the Act. In January of 1977, § 202(c) provided, in part, as follows:

(c)(1) The husband (as defined in section 416(f) of this title) of an individual entitled to old-age or disability insurance benefits, if such husband—

(A) has filed application for husband's insurance benefits,

(B) has attained age 62,

(C) was receiving at least one-half of his support, as determined in accordance with regulations prescribed by the Secretary, from such individual—

(i) if she had a period of disability which did not end prior to the month in which she became entitled to old-age or disability insurance benefits, at the beginning of such period or at the time she became entitled to such benefits, or

(ii) if she did not have such a period of disability, at the time she became entitled to such benefits,

and filed proof of such support within two years after the month in which she filed application with respect to such period of disability or after the month in which she became entitled to such benefits, as the case may be, or, if she did not have such a period, two years after the month in which she became entitled to such benefits, and

(D) is not entitled to old-age or disability insurance benefits based on a primary insurance amount which is less than one-half of the primary insurance amount of his wife,

shall be entitled to a husband's insurance benefit for each month, beginning with the first month after August 1950 in which he becomes so entitled to such insurance benefits and ending with the month preceding the month in which any of the following occurs: he dies, his wife dies, they are divorced, he becomes entitled to an old-age or disability insurance benefit based on a primary insurance amount which is equal to or exceeds one-

half of the primary insurance amount of his wife, or his wife is not entitled to disability insurance benefits and is not entitled to old-age insurance benefits. Plaintiff met all requirements of this section as it existed and was administered in January of 1977 with the exception of the requirement that the husband must have been receiving one-half of his support from his spouse at the time she became eligible for benefits. Plaintiff was not receiving one-half of his support from his wife at this time.

The one-half support requirement for widower's insurance benefits in § 202(f) of the Act, 42 U.S.C. § 402(f), was declared unconstitutional by the Supreme Court in *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977). On March 21, 1977, shortly after *Goldfarb* was decided, the Supreme Court rendered summary affirmances in the cases of *Califano v. Silbowitz*, 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977), and *Califano v. Jablon*, 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977). In each of these cases, a lower court had ruled that the one-half support requirement for husband's insurance benefits in § 202(c) of the Act, the same requirement struck by the Court in *Goldfarb* as to § 202(f), was unconstitutional due to gender-based discrimination. When Congress enacted section 334(b)(1)(A) of Pub.L. 95–216, it brought section 202(c) of the Act into conformity with these Supreme Court rulings by striking subparagraph (C) of the section, the one-half support requirement.

The question before the Court is whether plaintiff's failure to satisfy § 402(c)(1)(C) bars him from qualifying under the exception to the offset provision. There are three reasons why this Court does not find plaintiff to be so barred. First, the legislative history of the passing of Pub.L. 95–216 reveals that part of the purpose of the change in the law was in order to eliminate the "gender-based differences of treatment for men and women under present law." 3 U.S.Code Congressional and Administrative News, Legislative History Proclamation, 95th Congress, 1977, pp. 4155, 4161. It

would be anomalous for this intent to be interpreted as a choice to return to an earlier unconstitutional gender-discriminatory standard.

 A construction of a statute which thwarts the declared intention and policy of Congress is to be avoided. *Congress of Railway Unions v. Hodgson*, 326 F.Supp. 68 (D.C.D.C.1971). It may be assumed that Congress, in reaching back to the January standard, intended to incorporate the March decision of unconstitutionality into the December amendments by implication. "The legislative will is the all-important or controlling factor, and has been said to be the vital part, the heart, soul and essence of the law. (Citations omitted). In searching for the will and intent, it is to be assumed that Congress was aware of established rules of law applicable to the statute and thus, upon enactment, the statute is to be read in conjunction with the entire body of law." *Kansas City v. Federal Pacific Electric Co.*, 310 F.2d 271 at 274–275 (8th Cir. 1962), *cert. denied*, 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed.2d 171 (1962), 373 U.S. 914, 83 S.Ct. 1297, 10 L.Ed.2d 415 (1963). Congress was presumptively aware of the March Supreme Court ruling on the Amendments, and the subsequently enacted statute must be read with the Court's holding in mind. If this were not done, § 334(g) of Pub.L. 95–216 would be of questionable constitutionality. When alternative constructions of a statute are possible, the court must choose that interpretation which will avoid a declaration of unconstitutionality. *Lucas v. Morton*, 358 F.Supp. 900 (W.D.Pa.1973).

Second, it is important to keep in mind that Congress enacted the exception to the offset provision (and the provision itself) at the same time that it eliminated the gender-discriminatory language in the 1977 version of § 402(c)(1)(C). It would be irrational for Congress to intend that those falling under the exception to the offset provision must satisfy the gender-discriminatory standard it had just abolished.

 Finally, the nature of the Social Security legislation itself also must be considered in interpreting § 334(g). Numerous

cases have pointed out that the Social Security Act is a remedial statute, to be broadly construed and liberally applied. *Elam v. Hanson*, 384 F.Supp. 549 (N.C.Ohio, 1974), and cases cited therein. "In practical terms the principles mean that, when a Social Security Act provision can reasonably be construed in favor of the one seeking benefits, it should be so construed." *Damon v. Secretary of H. E. W.*, 557 F.2d 31, 33 (2d Cir. 1977).

■ Examined in light of the underlying policy considerations of the Social Security Act, logical consistency, and the declared legislative intent of Congress, this Court holds that only those constitutional portions of the Social Security Act as it stood in January 1977 are to serve as the measure of whether an individual has fulfilled the requirements necessary to qualify for the exception. Plaintiff met all constitutional requirements of § 202(c) of the Act as it stood in January of 1977: (1) Plaintiff's application for husband's insurance benefits was filed (§ 202(c)(1)(A)); (2) plaintiff had attained age 62 (§ 202(c)(1)(B)); and (3) plaintiff was not entitled to old-age or disability insurance benefits (§ 202(c)(1)(D)). As plaintiff was receiving a government pension within the period of December 1977 to November 1982 and meets the above requirements of § 202(c), plaintiff qualifies under the exception to the offset provisions, and therefore is entitled to receive his husband's insurance benefits.

Good cause appearing therefor,

IT IS ORDERED that plaintiff's Motion for Summary Judgment is granted.

IT IS FURTHER ORDERED that plaintiff's benefits be reinstated.

IT IS FURTHER ORDERED that plaintiff receive back benefits from September 1978 to present.