Nathan ROSOFSKY, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. 80 C 2298.

United States District Court, E. D. New York.

Oct. 5, 1981.

Nathan Rosofsky, pro se.

Edward R. Korman, U. S. Atty., Brooklyn, N. Y. (Jo Davis, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff brought this action under section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services (the "Secretary") that plaintiff was not entitled to husband's insurance benefits because they were entirely offset by the amount of his government pension, and that plaintiff was overpaid and must repay $859.20. The Secretary moves under Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings.

### I

Section 202(c) of the Act, 42 U.S.C. § 402(c), as it stood in January 1977, provided, in pertinent part, that a husband of a woman entitled to old-age or disability insurance benefits could obtain a "husband's insurance" benefit if he met certain conditions. If he (A) had filed for such benefits, (B) had attained age 62, (C) had been receiving at least one-half his support from his wife, and (D) was not eligible for certain old-age or disability insurance benefits, he became entitled to the "husband's insurance" benefit. To receive a "wife's insurance" benefit, the wife of a man receiving old-age or disability benefits, had to meet all these conditions except one. She did not have to show that she had received one-half her support from her husband. Section 202(b) of the Act, 42 U.S.C. § 402(b).

In *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), decided March 7, 1977, the Supreme Court, in considering an almost identical provision as to survivor's benefits, held that such a difference in the treatment of husbands and wives violated the due process clause of the Fifth Amendment to the United States Constitution. The opinion of Brennan, J., joined by three other Justices, rejected a distinction based on gender "that results in the efforts of female workers required to pay social security taxes producing less protection for their spouses than is produced by the efforts of men." *Id.* at 206–207, 97 S.Ct. at 1026–27. The opinion concluded "that the differential treatment of nondependent widows and widowers results not ... from a deliberate congressional intention to remedy the arguably greater needs of the former, but rather from an intention to aid the dependent spouses of deceased wage earners, coupled with a presumption that wives are usually dependent." *Id.* at 216–17, 97 S.Ct. at 1031–32. This presumption, according to the opinion, is "based simply on 'archaic and overbroad' generalizations that it would save the Government time, money, and effort simply to pay benefits to all widows, rather than to require proof of dependency of both sexes.... [S]uch assumptions do not suffice to justify a gender-based discrimination in the distribution of employment-related benefits." *Id.* at 217, 97 S.Ct. at 1032 (citations omitted). Stevens, J., concurred on the ground that the discrimination was against males and was merely the accidental byproduct of a traditional way of thinking about females. *Id.* at 222, 97 S.Ct. at 1034. Four Justices dissented in an opinion by Rehnquist, J.

Two weeks later, on March 21, 1977, the Supreme Court rendered unanimous summary affirmances in *Jablon v. Califano*, 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768, *affirming* 399 F.Supp. 118 (D.Md.1975) (three judge district court), and *Califano v. Silbowitz*, 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768, *affirming* 397 F.Supp. 862 (S.D.Fla.1975), thereby making it clear that the result in the *Goldfarb* decision applied to the companion legislation establishing husband's insurance benefits. As a result the Social Security Administration granted such benefits without regard to dependency.

Robert M. Ball, former Commissioner of Social Security, explained to the Subcommittee on Social Security of the House Ways and Means Committee that "[t]he principle [sic] effect of the March 1977 Supreme Court decisions granting benefits to husbands and widowers under the same conditions as those previously applicable to wives and widows (that is, without a specific test of dependency) is to make eligible for social security benefits a substantial number of men who have worked for the Federal Government or for those state and local governments not covered by social security and whose wives have worked under social security. Very few of these men are in any real sense the economic dependents of their wives...." Hearings before the Subcommittee on Social Security of the Committee on Ways and Means, House of Representatives, 95th Cong., 1st Sess., p. 158 (July 18, 1977).

This result provided a "windfall" for retired male government employees not covered by social security but married to wives who had worked in covered employment. Had these men worked in the private sector, they would be eligible for old age insurance benefits or husband's insurance benefits, but not both. Under section 202(k)(2)(B) of the Act, 42 U.S.C. § 402(k)(2)(B), a person eligible for more than one type of monthly insurance benefit is entitled to receive only the one providing the largest benefit amount. But since a retired male government employee receives a civil service pension and not social security old age benefits, he became entitled under the Supreme Court decisions to receive both the pension and husband's insurance benefits.

To be sure, retired female government employees with husbands covered by social security had always received this "windfall". But when it was extended to men Congress took steps to eliminate it, evidently because the inclusion of men added sub-

stantially to the burden on the public fisc. Lawrence Alpern, Deputy Chief Actuary for the Office of the Actuary of the Social Security Administration, estimated on May 5, 1975 that elimination of the dependency requirement for husband's insurance benefits would cost approximately 411 million dollars in calendar year 1976. *Jablon v. Califano*, 399 F.Supp. at 132. The burden could be expected to increase over time because of cost of living benefit raises and the increase in the number of elderly.

Congress' response was to pass, as an amendment to the Act, Section 334 of Public Law 95–216 in December 1977, providing that the amount of wife's or husband's insurance benefits due to an individual under social security would be offset by the amount of government pension benefits paid to that individual. Under this legislation a retired male government employee otherwise entitled to receive, for example, $100 per month in husband's insurance benefits would receive nothing if his civil service pension provided more than $100 a month. If his civil service pension provided less than $100, for instance, $80, he would receive husband's insurance benefits totalling only the difference in the two benefit amounts, in this example, $20. The pension offset provision was made applicable to monthly insurance benefits payable beginning in December 1977 on the basis of applications filed in or after December 1977. P.L. 95–216, § 334(f) (1977); 20 C.F.R. § 404.408a(d).

However, in the amendment Congress provided an exception to the pension offset provision. Subsection 334(g) of Public Law 95–216 provides, in pertinent part, that the pension offset to insurance benefits is not to apply to an individual (A) who is eligible for a government pension for any month within the 60-month period beginning with the month the amendment is enacted (December 1977), and (B) who, "at the time of application for or initial entitlement to" insurance benefits, "meets the requirements" of the Act "as it was in effect and being administered in January 1977." This exception means that the pension offset does not apply to an individual eligible for a government pension in December 1977 through December 1982 and who meets the requirements for wife's or husband's insurance benefits under the Act as it was "in effect and being administered in January 1977."

## II

On November 1, 1977 plaintiff's wife—Miriam Rosofsky—filed an application for old age retirement insurance benefits under the Act. On that same date plaintiff—an employee of the United States Treasury Department from 1928 through 1972 and now retired on a federal pension—filed an application for husband's insurance benefits. In February 1978, the month plaintiff's wife turned sixty-two, both plaintiff and his wife became eligible for and began receiving insurance benefits.

In a letter dated September 20, 1978 the Social Security Administration notified plaintiff that his spousal insurance benefits must be reduced by the monthly amount of his pension, and that since his pension exceeded his spousal benefit, no benefits were payable and he had been overpaid $859.20 from March 1978 through August 1978. Plaintiff requested reconsideration. On January 12, 1979 the Social Security Administration affirmed the earlier finding and held that he must repay the $859.20.

Plaintiff sought review, and in a decision dated May 25, 1979 Administrative Law Judge ("ALJ") Joseph A. Graziano found in plaintiff's favor. The ALJ noted that the statutory requirement of one-half support for husband's insurance benefits was not being followed in January 1977. A husband unable to demonstrate dependency who applied for benefits at that time received a notice informing him that the one-half support requirement was under review by the Supreme Court and that all applications were being held in abeyance until the Supreme Court ruled on its constitutionality. If plaintiff had applied for husband's insurance benefits in January 1977 and met all the requirements except dependency, his application would have been allowed follow-

ing the Supreme Court decision in *Califano v. Goldfarb.* The ALJ therefore held that plaintiff had satisfied the exception to the pension offset provision by meeting the requirements of the Act "as it was in effect and being administered in January 1977" and should receive husband's insurance benefits without offset until at least November 1982.

On October 24, 1979 the Appeals Council decided to reopen the ALJ's decision under the authority of 20 C.F.R. § 404.957(b) (current version at 20 C.F.R. § 404.988(b)) which provided that an otherwise final decision of an ALJ might be reopened within four years after the date of the notice of initial determination upon a finding of good cause. Good cause was deemed to exist when "[t]here is an error as to such determination or decision on the face of the evidence in which such determination or decision is based." 20 C.F.R. § 404.958(c) (current version at 20 C.F.R. § 404.989(a)(3)). The Appeals Council proposed to find that the one-half support requirement was indeed in effect in January 1977 and that plaintiff failed to satisfy that requirement. But since plaintiff had not been given an opportunity to appear in person before the ALJ, the Council remanded the case to another ALJ for hearing.

After a hearing on March 3, 1980 attended by plaintiff and his wife, ALJ Irwin Bernstein on March 24, 1980 agreed with the Appeals Council that the one-half support requirement was in effect in January 1977 and that plaintiff did not satisfy the conditions of the pension offset exception. The ALJ found that plaintiff should not receive husband's insurance benefits in the future and had been overpaid benefits in the amount of $859.20. The ALJ held that although plaintiff was not at fault in causing the overpayment he should nevertheless repay the sum because refund would not defeat the purpose of the Act and would not be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.-506. The Appeals Council found no basis for granting review.

## III

Plaintiff presents three separate objections to the Secretary's decision. First, he argues that the 1977 amendment to the Act applies only to applications filed in or after December 1977, and his application for husband's insurance benefits was filed on November 1, 1977. P.L. 95–216, § 334(f); 20 C.F.R. § 404.408a(d). However, under section 202(j)(2) of the Act, 42 U.S.C. § 402(j)(2), an application for benefits filed before the applicant qualifies for them is not deemed filed until the first month in which the applicant satisfies all the applicable requirements. Plaintiff was not eligible for husband's insurance benefits until his wife reached the age of sixty-two on February 22, 1978 and became eligible for old-age retirement benefits. Thus his application is not deemed filed until February 1978 and is subject to the pension offset provisions.

Plaintiff's second argument is that he falls within the exception to the pension offset provision because he was receiving a federal government pension in December 1977 and met the requirements of the Act "as it was in effect and being administered in January 1977." ALJ Graziano agreed with this contention. This court does not.

No doubt those applications for husband's insurance benefits filed in January 1977 which did not show economic dependency were held in abeyance until the Supreme Court's decision in *Califano v. Goldfarb,* after which these applications were allowed. In that literal sense plaintiff met the requirements of the Act as it was "in effect and being administered in January 1977."

However, to construe the 1977 amendments as plaintiff urges would be to disregard the manifest purpose of Congress to limit the exception to those entitled to spousal benefits under the Act as written in January 1977 and not to include those who received benefits as a result of the courts' striking down of the support requirement. The court is not required to read statutory language so literally as to defeat its aim. *United States v. 0.16 of an Acre of Land,* 517 F.Supp. 1115, 1119 (E.D.N.Y.1981).

The pension offset provisions of the amendment were designed to end the "windfall" to non-dependent retired male government employees resulting from the Supreme Court decisions in the *Goldfarb, Jablon*, and *Silbowitz* cases. However, as written these provisions also reduced the spousal insurance benefits available to certain retired female government employees. The Conference Committee's concern as to the financial impact the reduction would have upon these women led it to insert the exception to the pension offset:

> The managers are concerned that there may be large numbers of women, especially widows in their late fifties, who are already drawing pensions, or would be eligible to draw them within 5 years of the date of enactment of this bill, based on their non-covered work and whose retirement income was planned for on the assumption of the availability of full wife's or widow's benefits under social security. Inclusion of this exception to the applicability of the Senate provision reinforces its prospective nature and avoids penalizing people who are already retired, or close to retirement, from public employment and who cannot be expected to readjust their retirement plans to take account of the "offset" provision that will apply in the future.

House Conference Report No. 95–837, Joint Explanatory Statement of the Committee of Conference, 95th Cong., 1st Sess. at 72 *reprinted in* [1977] U.S.Code Cong. & Ad.News 4308, 4318.

It is clear from this excerpt from the conference report that Congress was focussing on the reliance interests of women, not men. Thus, Congress exempted from the pension deduction those persons eligible for spousal benefits before the Supreme Court struck down the gender-based dependency requirement because this would provide benefits to women without regard to dependency but to men only if they satisfied the one-half support test. Congress attempted to do this by making the exception available to applicants meeting the requirements of the Act "as it was in effect and being administered in January 1977."

In choosing the January 1977 date Congress selected a month that preceded the March 1977 Supreme Court decisions in the *Goldfarb, Jablon*, and *Silbowitz* cases, apparently in the belief that the Social Security Administration required male applicants to show dependency until the issuance of these decisions. This perhaps mistaken belief is understandable since the exception was only added to the amendment in the Conference Committee, and it is unlikely that the committee had an opportunity to investigate the Social Security Administration's actual administrative practice. *See* House Conference Report No. 95–837, *supra.* If Congress had wished to provide the exception to male applicants without regard to dependency, it would certainly have selected a control date after the March 1977 Supreme Court decisions, not before.

■ Plaintiff's third argument is that the pension offset provisions violate his due process rights by discriminating on the basis of gender because they reduce the benefits to him as a man commencing as of the date of enactment but will not reduce the benefits of any woman applying before December 1982. The effect of the Supreme Court decision was to invalidate under the Due Process Clause of the Fifth Amendment the gender-based distinction that a male applying for spousal insurance benefits must show that he receives at least one-half of his economic support from his wife but a female applying for such benefits need make no showing of support. The one-half support requirement was therefore treated as void, and both men and women received spousal insurance benefits without regard to dependency. *See, e. g., Jablon v. Califano*, 399 F.Supp. at 132, *aff'd*, 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977). Congress has sought to resurrect this gender-based requirement and make it applicable to applications for benefits in the five year period between December 1977 and December 1982. The question is whether Congress may do so.

In attempting to foretell how the Supreme Court may decide this issue, the

court is mindful that no opinion in *Califano v. Goldfarb* expressed the views of a majority of the Court. Stevens, J., who voted for the same result as did the four Justices joining in the opinion of Brennan, J., reached that result on the ground that "habit, rather than analysis or actual reflection," caused Congress to discriminate in favor of females, that "this discrimination against a group of males is merely the accidental byproduct of a traditional way of thinking about females," and that the discrimination was "sufficiently questionable that 'due process requires that there be a legitimate basis for presuming that the rule was actually intended to serve [the] interest' put forward by the Government as its justification." 430 U.S. at 222–23, 97 S.Ct. at 1034–35, quoting *Hampton v. Mow Sun Wong*, 426 U.S. 88, 103, 96 S.Ct. 1895, 1905, 48 L.Ed.2d 495 (1976).

In urging the passage of the 1977 amendment the Conference Committee articulated a reason for the exception to the pension offset, namely, that women (including women who retire at any time within five years of December 1977) may have planned their retirement on the assumption that full wife's or widow's benefits would be available. Would this avowed concern for the supposed reliance interests of some women be sufficient under the opinion of Stevens, J., to justify the continuation of the discrimination between men and women?

■ Presumably most legislation arouses expectations and leads to reliance on the part of some. But plainly that cannot be a justification for the continuation of whatever unconstitutional practice Congress chooses. *Cf. Shelley v. Kraemer*, 334 U.S. 1, 22, 68 S.Ct. 836, 846, 92 L.Ed. 1161 (1948) (property owners have no constitutional right to judicial enforcement of an agreement that results in the denial of equal protection to others). One would not suppose, for example, that a statute giving benefits only to male whites could be validly extended for a term of years because they in fact relied on the prospect of those benefits. The Supreme Court has upheld payments under a statute previously declared invalid under the Establishment Clause of the First Amendment where services had been rendered prior to the Court's holding and in reliance on the statute. *Lemon v. Kurtzman*, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973). The minimal interference with the constitutional interest to be protected, the actual reliance on the statute, the justification for doing so, and the irremediable injury which would otherwise be inflicted, apparently persuaded the court to approve the payments.

That decision hardly justifies a continuation of discriminatory social security payments for all eligible women who retire between December 1977 and December 1982. First, only women are presumed to have relied on the practice of the Social Security Administration, although following the decision in *Califano v. Goldfarb* men were granted husband's benefits without regard to dependency. To the extent that Congress concerned itself with the interests of women relying on an unconstitutional practice and disregarded the interests of men who relied on a constitutional practice, the 1977 exception to the pension offset provision appears to be the product of the same traditional way of thinking about females that was condemned in *Califano v. Goldfarb*.

Moreover, many of the eligible women (probably at least 50%, *see Califano v. Goldfarb*, 430 U.S. at 238 n.7, 97 S.Ct. at 1042 n.7, Rehnquist, J., dissenting) would no doubt be able to show that they received at least one-half their support from their husbands. The reliance interest of these women could have been protected simply by making applicable to both men and women the same requirement of showing they received one-half their support from their spouses. The government has not suggested a justification for imposing different burdens on those able to show dependency based on whether they are male or female.

In addition, the women who do not receive half their support from their husbands and who will benefit from the disparate treatment in the 1977 amendment are the same as those who benefitted from such

treatment in the original legislation. They are the most successful women, least likely to need the benefits. Stevens, J., concurring in *Califano v. Goldfarb*, 430 U.S. at 221, 97 S.Ct. at 1034.

Finally, even if it were proper to continue different treatment of men and women to take account of the reliance interests of women but not men, the government does not suggest that it would be impractical to base exceptions to the offset provision on a showing of actual reliance.

If Congress, in order to protect reliance interests, is to be allowed to continue the distinction between men and women previously held unconstitutional, Congress should at least be required to minimize the discriminatory treatment on which the holding of unconstitutionality was based. Congress has not done that here but appears to have reacted much as it did in the original legislation, without appropriate concern for the claims of similarly situated surviving spouses to equal treatment. This court therefore holds that the exception to the pension offset provision violates the Due Process Clause of the Fifth Amendment. *But see Miller v. Dept. of Health and Human Services*, Civil No. 80–1792 (E.D.N.Y. July 10, 1981) (plaintiff challenged the distinction between public and private sector employees but did not challenge the gender-based discrimination); *Duffy v. Harris*, (Jan. 1980-Sept. 1980 Transfer Binder) Unemp. Ins.Rep. (CCH) ¶ 16,906 (D.N.M.1979).

### IV

■ Congress considered the possibility that a court might decide that the pension offset exception was invalid, and provided in the amendment:

> If any provision of this subsection [providing the exception to the pension offset], or the application thereof to any person or circumstance, is held invalid, the remainder of this section [providing for the pension offset] shall not be affected thereby, but the application of this subsection to any other persons or circumstances shall also be considered invalid.

P.L. 95–216, § 334(g)(3) (1977).

This provision embodies a Congressional decision that, in the event the exception is declared unconstitutional, it would be preferable to eliminate the benefits for both men and women rather than provide the benefits to men. In other words, Congress was interested in attempting to continue benefits to women who would lose them from the pension offset without, at the same time, risking the far greater outlays that would result if the exception were applied to non-dependent males.

This separability clause raises the question of whether plaintiff has standing to attack the pension offset provision. The argument is that under the terms of the clause plaintiff cannot benefit from a holding that the pension offset provision is invalid because the consequence of such a determination would be to deny him benefits. *See Caloger v. Harris*, Civ. H–80–388 (D.Md.1981).

■ To have standing in court a plaintiff must, of course, present a "case" or "controversy" over which a federal court has jurisdiction under Article III of the Constitution. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). In this case there is undoubtedly a justiciable case or controversy. Plaintiff seeks money, and the Secretary resists payment. Moreover, plaintiff is also before the court defending against what might be termed a counterclaim. The Secretary seeks recovery from him of an alleged overpayment of $859.20, and the plaintiff resists.

■ But even if there is a justiciable case before the court, a party, whether plaintiff or defendant, in order to have standing to raise a constitutional issue, must demonstrate that the resolution of that issue may make a significant difference to him. A plaintiff must show that there is a possibility that he will benefit from a favorable decision. *Orr v. Orr*, 440 U.S. 268, 271–78, 99 S.Ct. 1102, 1107–11, 59 L.Ed.2d 306 (1979); *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). A defendant

must show that a favorable decision can possibly lead to frustration of the plaintiff's claim against him. *See Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). Plaintiff in this case has made the requisite showing in his roles as a claimant seeking to obtain benefits and as a defender against the Secretary's claim for repayment.

■ As noted above, plaintiff is not required to refund an overpayment if he was not at fault in receiving it and repayment would be "against equity and good conscience." 42 U.S.C. § 404(b). Admittedly plaintiff was not at fault, and this court holds that it is "against equity and good conscience" for the Secretary to require repayment from him as a man while the Secretary has not at the same time required women to repay.

It is true that the regulations issued by the Secretary declare that a repayment is "against equity and good conscience" only where, because of the incorrect payment or notice of it, the claimant relinquished a valuable right or changed his position for the worse. 20 C.F.R. § 404.509. But the court is not bound by this interpretation. The words of 42 U.S.C. § 404(b) include no such limitation, and it may fairly be assumed that Congress would regard a discriminatory and unconstitutional exaction from a man as against equity and good conscience. The Secretary is therefore not entitled to repayment of $859.20.

Even in his capacity as a plaintiff seeking payments from the Secretary plaintiff has the requisite standing. Separability clauses, including the one involved in this case, have merely a potential effect on the outcome of litigation. The provision here at issue creates a presumption that in the event the exception to the offset provision is found to be invalid, the pension deduction will remain in effect and be applied to all applicants for spousal insurance benefits. *Electric Bond & Share Co. v. S. E. C.,* 303 U.S. 419, 434, 58 S.Ct. 678, 683, 82 L.Ed. 936 (1938). This is a presumption only and a court finding the exception unconstitutional may consider whether "there is any inherent or practical difficulty in the separate and independent enforcement" of the pension deduction before allowing it to stand without its exception. *Id.* at 435, 58 S.Ct. at 683.

Consequently when plaintiff brought this action, it was not a foregone conclusion that a decision upholding his constitutional challenge would result in a denial of husband's benefits to him. It was by no means frivolous to argue that the pension deduction itself should be stricken along with its gender-based exception clause, thus entitling plaintiff to social security payments. Since there was a possibility that plaintiff in contesting the exception would benefit from a favorable decision, he had standing. *See Orr v. Orr,* 440 U.S. 268, 271–78, 99 S.Ct. 1102, 1107–11, 59 L.Ed.2d 306 (1979).

This court does not find "any inherent or practical difficulty" in enforcing the pension deduction without the exception. Plaintiff claims that the reduction of his spousal insurance benefits by the monthly amount of his federal government pension violates his constitutional rights by treating public sector retirees differently from private section retirees. However, from the standpoint of Social Security benefits the effect of the pension deduction is to treat retired government employees in a manner similar to persons who have retired from private sector employment. As noted above, under Section 202(k)(2)(B) of the Act, 42 U.S.C. § 402(k)(2)(B), the latter may receive Social Security benefits from their own old age insurance or from spousal insurance, but they may not receive both. By eliminating duplicative benefits Congress sought to minimize the fiscal burden on the Social Security system while effecting a measure of retirement security. For a court to eliminate the pension deduction or to extend the five-year exception to all eligible men and women without regard to dependence would needlessly fly in the face of Congressional intent at great expense to the taxpayer.

## V

This court concludes that the pension offset exception in subsection 334(g)(1) of Public Law 95–216 unconstitutionally discriminates on the basis of gender. Since the pension deduction itself is not affected by the invalidity of that subsection, the spousal benefits to which plaintiff is entitled are entirely offset by his government pension. However, it would be against equity and good conscience to require plaintiff to repay the $859.20 in benefits which he received from March 1978 through August 1978.

The decision of the Secretary is reversed to the extent it directs repayment by plaintiff of $859.20 and is otherwise affirmed. So ordered.