**Sidney J. WEBB, Plaintiff-Appellee,**

**v.**

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellant.**

**No. 81–4256.**

United States Court of Appeals, Ninth Circuit.

Argued March 12, 1982.

Submitted July 23, 1982.

Decided March 7, 1983.

Frank A. Rosenfeld, Robert S. Greenspan, Atty., Appellate Section, Dept. of Justice, Washington, D.C., for defendant-appellant.

Sidney J. Webb, pro se.

Before GOODWIN and ANDERSON, Circuit Judges, and JAMESON,* District Judge.

## J. BLAINE ANDERSON, Circuit Judge:

The Secretary of Health and Human Services ("Secretary") appeals a district court judgment finding Webb exempt from the husband's "pension offset" provision of the Social Security Act. Social Security Act § 202(c)(2)(A), 42 U.S.C. § 402(c)(2)(A). To avoid repeating the fact statement in the district court's reported opinion, *Webb v. Harris,* 509 F.Supp. 1091 (N.D.Cal.1981), only a brief summary of the facts is offered here.

Webb retired on March 31, 1977, from his job with the California Public Utilities Commission. He immediately began receiving a state pension. On December 2, 1977, Webb satisfied all requirements for husband's insurance benefits under § 202(c) of the Social Security Act ("Act"), 42 U.S.C. § 402(c), and began receiving benefits soon thereafter. Eighteen days later, on December 20, 1977, Congress enacted the pension offset provision which took effect "for months beginning with the month in which this Act is enacted." Social Security Amendments of 1977, Pub.L. No. 95–216, § 334(f), 91 Stat. 1509, 1546 (1977). Webb received husband's benefits through August, 1978, when the Secretary informed him that, due to the pension offset provision, he was no longer entitled to receive benefits. The Secretary terminated payments and sought recovery of the benefits Webb had been "overpaid."

The district court ruled that the pension offset provision did not apply to Webb because he fell within its so-called "grandfather clause." That clause exempts from the pension offset provision individuals who were receiving or became eligible to receive government pensions within five years of December, 1977, and who, when they applied for husband's benefits, met the requirements for entitlement to such benefits

as those requirements existed in January, 1977. Social Security Amendments of 1977, Pub.L. 95–216, § 334(g)(1), 91 Stat. 1509, 1546–47 (1977). Webb met all requirements for husband's benefits as they existed in January, 1977, except the requirement that the husband must be receiving one-half support from his wife at the time she became eligible for benefits. Emphasizing that the one-half support requirement was declared unconstitutional in March, 1977, *Califano v. Silbowitz,* 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977); *Califano v. Jablon,* 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977), the district court held that Webb met all the *constitutional* requirements as they existed in 1977, and was therefore exempt from the pension offset provision. We affirm.

Initially, Webb urges that the pension offset provision is unconstitutional retroactive legislation to the extent it affects persons who became eligible for benefits between December 1, 1977 and December 19, 1977. We need not decide that issue because, for purposes of this case, we assume the legislation is retroactive and hold the grandfather clause operative to preserve Webb's claim.

The Secretary contends that the district court strained in interpreting § 334(g)(1) as it did, in an effort to avoid addressing the statute's constitutionality. The Secretary cites the well-known rule that constitutional analysis should be avoided only when a statute presents a fair alternative construction, *see Lewis v. United States,* 445 U.S. 55, 65, 100 S.Ct. 915, 920, 63 L.Ed.2d 198, 209 (1980), then contends that the language of § 334(g)(1) is so clear on its face that no fair alternative construction is available. The *language* of § 334(g)(1) appears clear enough. When Congress enacts a statute, however, that on its face purports to rejuvenate legislation previously held unconstitutional, we must inquire into Congress' intent. We believe a fair interpretation is that Congress did not intend to enact unconstitutional legislation.

---

* The Honorable William J. Jameson, Senior United States District Judge, District of Montana, sitting by designation.

The district court cited the rule of statutory construction that Congress is presumed aware of the judicial construction of existing law. *Webb v. Harris,* 509 F.Supp. at 1094. In the instant case, that presumption is unnecessary because legislative history reveals Congress actually discussed the cases that held the one-half dependency requirement unconstitutional. S.Rep. No. 95–572, 95th Cong., 1st Sess. 27–18 (1977). Indeed, those cases were a motivating force behind the 1977 Social Security Amendments. *See* H.R.Rep. No. 95–702, 95th Cong., 1st Sess. 4, *reprinted in* 1977 U.S. Code Cong. & Ad.News 4155, 4161. In light of this legislative history, we will not attribute to Congress the intent to breathe life into legislation previously invalidated by the Supreme Court. *See Rosofsky v. Schweiker,* 523 F.Supp. 1180 (E.D.N.Y.1981) (holding § 334(g)(1) unconstitutional in the same manner as the one-half dependency requirement). We agree with the district court that a better interpretation of § 334(g)(1) is that, when Congress referred to the "requirements ... in effect and being administered in January 1977," it meant only the *constitutional* requirements. Accordingly, the district court's orders are

AFFIRMED.