Sidney J. **WEBB**, Plaintiff,

v.

Margaret M. **HECKLER**, Secretary of Health and Human Services, Defendant.

No. C–80–1667–CAL.

United States District Court, N.D. California.

June 19, 1986.

Sidney J. Webb, in pro per.

Stephen L. Schirle, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## OPINION AND ORDER FOR SUMMARY JUDGMENT

LEGGE, District Judge.

In September 1978, defendant the Department of Health and Human Services discontinued the husband's insurance benefits which plaintiff had been receiving under the Social Security Act. Defendant determined that those benefits were subject to a pension-offset provision enacted by Congress on December 20, 1977. That provision reduced all spousal insurance benefits, including husband's benefits, by the amount of any state or federal government pension to which the recipient was entitled. Social Security Amendments of 1977 (1977 Amendments), § 334(b), Pub.L. No. 95–216, 91 Stat. 1544.

From December 1977 through August 1978 plaintiff received the husband's benefits of $45.70 per month. In September 1978 he was informed that his benefits were subject to the pension-offset provision. Since his monthly pension from the State of California to be offset is $1,592.97, his benefits from defendant were discontinued. The discontinuance was upheld by an Administrative Law Judge. Plaintiff then sought review in this court.

On cross motions for summary judgment, this court (J. Robert P. Aguilar) originally entered judgment for plaintiff. The court held that he was exempt from the pension-offset provision by virtue of a grandfather clause in the statute. *Webb v. Harris,* 509 F.Supp. 1091 (N.D.Cal.1981). That judgment was affirmed by the Ninth Circuit. *Webb v. Schweiker,* 701 F.2d 81 (9th Cir.1983).

In a similar case, *Heckler v. Mathews,* 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984), the Supreme Court later held that applicants who filed their applications for benefits after December 1, 1977, were not exempt from the offset-provision by virtue of the grandfather clause unless they could establish that they were dependent upon their wives for half of their support. Accordingly, the Supreme Court vacated the judgment in this case. *Heckler v. Webb,* 465 U.S. 1095, 104 S.Ct. 1583, 80 L.Ed.2d 117 (1984). The case was then remanded to this court. 731 F.2d 633 (9th Cir.1984). On remand, the parties contend that as a matter of law judgment should now be entered in their respective favor.

### I.

The Social Security Act grants spousal benefits to the wives, husbands, widows and widowers of retired and disabled wage earners. 42 U.S.C. § 402. Applicants for spousal benefits must file an application, be 62 years old, and demonstrate that he or she is not entitled to benefits based on a primary insurance amount less than one half of the spouse's primary insurance amount. *See e.g.,* 42 U.S.C. § 402(c). Prior to March 1977, husbands could not qualify for spousal benefits unless they also demonstrated dependency on their wives for one half of their support; but wives were entitled to benefits without demonstrating dependency. *See* former 42 U.S.C. § 402(b), (c)(1)(C) & (f)(1)(D) (1976). In March 1977 the Supreme Court held that this gender-based distinction against husband's benefits violated the equal protection clause of the Fifth Amendment. *Califano v. Goldfarb,* 430 U.S. 199, 201, 97 S.Ct. 1021, 1024, 51 L.Ed.2d 270 (1977).

The decision in *Califano v. Goldfarb* removed the dependency requirement from the qualifications for husband's benefits as to applications filed after March 1977. Congress then repealed the dependency requirement as part of the 1977 Amendments. 1977 Amendments § 334(b)(1), 91 Stat. 1544.

To alleviate the fiscal strain on the Social Security trust fund resulting from the elimination of the dependency requirement, the 1977 Amendments added a pension-offset provision which reduced the spousal benefits of any individual who also received a state or federal government pension, by the amount of that pension. 1977 Amendments § 334(b)(2), Pub. L. No 95–216, 91 Stat. 1546. Benefits "for months beginning with the month in which [the 1977 Amendments were] enacted, on the basis of applications filed in or after the month in which [the 1977 Amendments were] enacted," were subject to this offset provision. 1977 Amendments § 334(f), Pub.L. No. 95–216, 91 Stat. 1546. Since the 1977 Amendments were enacted on December 20, 1977, all applications filed in or after December 1977 were subject to the offset provision, unless the applicant was exempted by the grandfather clause.

The grandfather clause grants full benefits to applicants who become eligible for spousal benefits within five years of the 1977 Amendments, and who meet the requirements for entitlement as they existed in January 1977. 1977 Amendments § 334(g). Pub.L. No. 95–216, 91 Stat 1546.

In *Heckler v. Mathews,* 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984) the Supreme Court found that by enacting the grandfather clause Congress intended to revive the dependency requirement for husband's benefits for the limited purpose of exempting certain individuals from the offset provisions. The Court upheld the constitutionality of the dependency requirement in the grandfather clause, because the clause served the legitimate governmental purpose of protecting those state and federal employees who had calculated their retirement income, and made their retirement plans, in reliance upon the law as it existed before the 1977 Amendments added the pension-offset provision. *Id.,* 104 S.Ct. at 1400.

## II.

When the present case was originally before this court, the court found that plaintiff did not depend upon his wife for one half of his support. *Webb v. Harris, supra,* 509 F.Supp. at 1094. This court decided that plaintiff was within the grandfather clause, based upon this court's interpretation that Congress did *not* intend to revive the dependency clause. In light of the Supreme Court's later contrary holding in *Heckler v. Mathews,* this court is now bound to hold that plaintiff is not within the grandfather clause.

Plaintiff argues that judgment should be entered in his favor, notwithstanding *Heckler v. Mathews,* because of the Congressional action in 1977. He argues that either: (1) the 1977 Amendments' offset provision only applies to applications "filed" in or after December 1977, and his application was "filed" in September 1977; or (2) since he met all the eligibility requirements as of December 2, 1977, the enactment of the offset provision later that month deprived him of a vested property right in benefits.

## III.

Plaintiff retired from his job with the California Public Utilities Commission on March 31, 1977 and began receiving a state pension. On September 21, 1977 he filed his application with defendant for husband's benefits. On October 31, 1977 he received an Award Certificate granting him benefits as of December 1977. His benefits were delayed until that date because he was not yet of eligible age; he did not become 62, the eligible age, until December 2, 1977.

Plaintiff's primary argument is that since his application was filed in September 1977, he is not subject to the pension offset provision which became effective in December 1977.

Although plaintiff's application was physically filed in September 1977, a preexisting section of the Social Security Act, section 202(j)(2), provides that an application is not deemed "filed" until the first month in which the applicant satisfies *all* of the entitlement requirements. Section 202(j)(2) provides:

*An Application* for any monthly benefits under this section *filed before the first month in which the applicant satisfies the requirements for such benefits shall be deemed a valid application* (and shall be deemed to have been filed in such first month) *only if* the applicant satisfies the requirements for such benefits before the Secretary makes a final decision on the application ... or ... before a decision based upon the evidence adduced at the hearing is made. 42 U.S.C. § 402(j)(2) (emphasis added).[1]

Since plaintiff did not turn 62, the age of eligibility, until December 2, 1977, defendant contends that his application was not "filed" until December 1977 and is therefore subject to the pension offset provision.

Since Congress generally uses words consistently within a statute, different sections within a statute are to be construed in tandem. *Erlenbaugh v. United States,* 409 U.S. 239, 243, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972). This rule of statutory construction applies equally to sections enacted at different times, because Congress passes new sections aware of existing sections in the statutory scheme. *Id.* at 244, 93 S.Ct. at 480. The new section is to be construed independently only when it is plainly shown that the statutes were enacted for different purposes. *See e.g., United States v. Jefferson Electric Manufacturing Co.,* 291 U.S. 386, 396, 54 S.Ct. 443, 446–47, 78 L.Ed. 859 (1933); *Fieldman v. Roper Corp.,* 586 F.Supp. 936, 938 (S.D. Miss.1984).

Plaintiff argues that the purpose of section 202(j)(2) was to prolong the prospective life of a benefits application, not to define the meaning of the word "filed" as used in the Act. He implicitly contends that Congress had a different purpose in enacting the effective date clause of the pension-offset provision; that is, protecting the interests of those applicants who had already applied for benefits on the basis of the *Califano v. Goldfarb* decision.

It is clear from the legislative history of section 202(j)(2) that Congress' primary purpose in enacting this section was to extend the validity of a premature application from three months, as provided prior to section 202(j)(2), to the time when a final decision is entered granting or denying of benefits. Conference Report No. 682, 89th Cong. 1st Sess., *reprinted in* 1965 U.S. Code Cong. & Ad.News 2256. Congress thought this extension was necessary to prevent an applicant, whose eligibility was determined only after prolonged litigation, from having to file anew and potentially be deprived of benefits for the first months of eligibility because of the limited retroactive operation of a new application. Senate Report No. 404, 89th Cong. 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Ad.News 2060. So one of Congress' purposes for enacting section 202(j)(2) was to postpone the date on which an application becomes valid or invalid. But the statute demonstrates a second intent, to postpone an application's effective filing date. Limiting an application's effective filing date is a corollary to extending its prospective life. Together these provisions validate an application from the moment the applicant satisfies the legal eligibility requirements, to the moment the adjudicative body decides that the requirements have been met. Without such a limitation on the filing date, the application process would be vulnerable to abuse: applicants who were not yet eligible for benefits could nevertheless, upon discovering legislation is before Congress that proposes altering benefits or requirements, file early applications and rely upon the delays in the administrative and judicial review process to preserve their eligibility.

---

**1.** In its regulations on applications filed before the first month of eligibility, 20 C.F.R. § 404.-620(a) the Department of Health and Human Services explains how this statute operates:

*General Rule.* If you file an application for benefits ... before meeting all requirements for entitlement, the claim will be denied unless all the requirements are met before a final decision is made on the application. If the requirements are met before that decision, we will treat your application as though it was filed in the month you first met all the requirements of entitlement.

Plaintiff relies on dicta in a footnote of the Supreme Court decision in *Heckler v. Mathews, supra,* to argue that Congress did not intend the effective-date clause of the pension-offset to be construed in tandem with section 202(j)(2). There the Court hypothesized that had Mathews, who applied for benefits on December 15, 1977, applied before December 1, 1977, he would have avoided the operation of the offset provision. *Id.,* 104 S.Ct. at 1400 n. 15. Since Mathews did not turn 62 until January 13, 1978, (*Heckler v. Mathews,* Motion to Affirm, p. 3 n. 1), plaintiff contends this statement demonstrates that the Supreme Court has interpreted the effective date clause to mean that the offset provision applies only to those applications physically filed after December 1, 1977.

Plaintiff's reliance on this passage is misplaced. This footnote follows the Court's discussion of how the offset provision's grandfather clause was enacted in order to protect the reliance on prior law by those individuals who met the dependency requirement and had already planned their retirement. Prior to hypothesizing about Mathews' timing, the Court specifically recognized that Congress intended primarily to protect the interests of this group, not the interests of those applicants who became eligible for benefits only after the *Califano v. Goldfarb* decision invalidated the dependency requirement. *Heckler v. Mathews,* supra, 104 S.Ct. at 1400 n. 15. The Court hypothesized as to Mathews' application to illustrate that no matter where the time line is drawn, because Congress could not specifically protect the reliance interests of all applicants who became eligible after the eradication of the dependency requirement, inevitably some applicants will have applied for benefits in vain.

Further, although Mathews had brought his birthdate to the attention of the Su-

preme Court, the issue of the interpretation of the effective date clause of the offset provision was not decided by the Court. And there is no indication that the Court, when it hypothesized that Mathews would have been eligible for benefits had he filed earlier, was interpreting of section 202(j)(2) and its impact on the meaning of the effective date clause.

Rules of statutory construction mandate that this court interpret the effective date clause of the pension offset provision to mean that the provision applies to all applicants who file and became eligible for benefits on or after December 1, 1977.[2] Since plaintiff did not become eligible for benefits until he turned 62 on December 2, 1977, his benefits are subject to the offset provision.

## IV.

Plaintiff's other argument is that the offset provision operated retroactively and deprived him of a vested property right.[3] Plaintiff contends that his right to benefits vested on December 2, 1977, when he met the eligibility requirements. Since the offset provision was not enacted until December 20, 1977, plaintiff argues that it operated retroactively to deprive him of a vested property right. Defendant argues that an individual is entitled to benefits not as of the date he meets the eligibility requirements, but only as of the end of the month in which he meets the requirements, and only if no event terminating eligibility occurs. This would mean plaintiff's right to benefits did not accrue until December 31, 1977 and the offset provision, since it was enacted prior to that date, did not operate retrospectively.

An expectation of social security benefits confers no rights on an applicant. Any rights an applicant has in benefits do not become vested until the applicant has actually established eligibility. *Flemming v.*

---

2. *Accord Rosofsky v. Schweiker,* 523 F.Supp. 1180, 1184 (E.D.N.Y.1981), *appeal dismissed* 457 U.S. 1141, 102 S.Ct. 3474, 73 L.Ed.2d 1361 (1982).

3. Although plaintiff raised this issue previously before the Ninth Circuit, that court specifically declined to decide that issue and instead assumed the legislation was retroactive. *Webb v. Schweiker,* 701 F.2d 81, 82 (9th Cir.1983).

*Nestor,* 363 U.S. 603, 609, 80 S.Ct. 1367, 1371–72, 4 L.Ed.2d 1435 (1960); *Harris v. Richardson,* 468 F.2d 1260 (9th Cir.1972), *cert. denied* 410 U.S. 986, 93 S.Ct. 1514, 36 L.Ed.2d 183 (1973).

Plaintiff relies on the Ninth Circuit's decision in *Fagner v. Heckler,* 779 F.2d 541 (9th Cir.1985). There the court held that an applicant for insurance benefits who received an administrative grant of disability benefits on June 25, 1981 for a disability period commencing on February 8, 1980, but did not receive her entitlement certificate until August 1981, was not subject to a reduction provision that went into effect on July 1, 1981. In *Fagner* the court found Mary Fagner "had a 'right' or 'legal title to' the disability benefits on June 25, 1981" because "[a]s of this date, she had 'qualified' for these benefits and had 'furnished proper grounds for seeking or claiming' such benefits." *Id.* at 543. Despite this language, *Fagner* is inapposite to the present case. The issue in *Fagner* was whether entitlement occurs in the month in which eligibility is established, as opposed to the month in which an award certificate is issued. The issue in the present case is whether entitlement occurs on the *day* the eligibility requirements are met, or at the end of the month in which the requirements are met.

Husband's insurance benefits, like other social security benefits, are distributed only for those months in which the recipient retains eligibility as of the last day of the month. When an event occurs, such as death or divorce, that terminates eligibility, benefits cease as of the end of the preceding month. 42 U.S.C. § 402(c)(1). The Act does not provide for benefit proration. Therefore, entitlement to benefits does not occur until the end of the month in which eligibility is established which, in plaintiff's case, was December 31, 1977.

Since the pension-offset provision was enacted before plaintiff became entitled to receive his benefits, its enactment did not operate retrospectively.

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is de-nied and defendant's motion summary judgment is granted.