919 F.2d 753
 12 ITRD 2332, 287 U.S.App.D.C. 82
 INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, et
al., Appellants,
v.
Elizabeth H. DOLE, Secretary of the United States Department of Labor.
 No. 89-5412.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 27, 1990.
Decided Nov. 27, 1990.
 
 Wendy L. Kahn, Washington, D.C., with whom Jordan Rossen, Leonard R. Page and Ralph O. Jones, Detroit, Mich., were on the brief, for appellants.
 Jeffrica Jenkins Lee, Atty., U.S. Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., and Michael Jay Singer, Atty., U.S. Dept. of Justice, Washington, D.C., were on the brief, for appellee.
 Before WALD, Chief Judge, RUTH B. GINSBURG and SENTELLE, Circuit Judges.
 Opinion for the Court filed Per Curiam.
 
 
 1
 Dissenting opinion filed by Chief Judge WALD.
 
 PER CURIAM:
 
 2
 Appellants, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, et al. sued the Secretary of the United States Department of Labor ("Secretary"), challenging regulations providing waivers for recovery of nonfault overpayments on the ground that they were not in conformity with the 1981 amendments to the 1974 Trade Act, 19 U.S.C. Sec. 2315(a)(1) (1988). The district court dismissed the suit, holding that the Secretary's regulations fell within the broad discretion Congress entrusted to her. We now affirm.
 
 I. STATUTORY FRAMEWORK
 
 3
 The Trade Act of 1974 ("the Act") provides federally-funded Trade Adjustment Assistance ("TAA") benefits to employees laid off as a result of foreign competition. Trade Act of 1974, Pub.L. No. 93-618, 88 Stat.1978 (1975) (codified as amended at 19 U.S.C. Secs. 2101-2495 (1988)). The Act directs the Secretary to provide benefits to eligible workers upon certification that their former employer has been adversely affected by foreign competition. Eligible employees may file for TAA benefits in the form of job training and placement services and weekly payments of Trade Readjustment Allowances ("TRA"). 19 U.S.C. Secs. 2271 et seq. Under the Act, the Secretary may enter into agreements with state agencies, which act as the "agent of the United States." 19 U.S.C. Secs. 2311(a), 2313(a). These state agencies process applications from individual claimants and determine whether they are entitled to receive benefits and services under the Act. 19 U.S.C. Sec. 2311(a). The Act also provides a mechanism for the Secretary to recoup overpayments--payments made to eligible workers in excess of their statutory entitlements. 19 U.S.C. Sec. 2315. As initially enacted, the Act provided for recovery of overpayments in cases of fraud, but was silent as to recovery of overpayments where fraud was not involved.
 
 
 4
 In 1981, in response to pressure to cut program spending, Congress amended the Act. Omnibus Budget Reconciliation Act of 1981 ("OBRA"), Pub.L. No. 97-35, Title XXV, Sec. 2509, 95 Stat. 887 (1981); see also 127 Cong.Rec. 13860 (1981) (statement by Sen. Danforth predicting 87% reduction in TAA program spending); Trade Adjustment Assistance for Workers, Firms, and Communities: Hearings Before the Subcomm. on Trade of the House Comm. on Ways and Means, 97th Cong., 1st Sess. 43 (1981) [hereinafter House Hearings] (initial estimate of 77% cut in TAA spending). The amendments require cooperating state agencies to recover nonfault overpayments in addition to fraudulent overpayments. However, the amendments also allow state agencies to waive recovery of nonfault overpayments according to guidelines established by the Secretary. 19 U.S.C. Sec. 2315(a)(1). Section 2315(a)(1) on recovery of overpayments states:
 
 
 5
 If a cooperating State agency, the Secretary, or a court of competent jurisdiction determines that any person has received any payment under this part to which the person was not entitled ... such person shall be liable to repay such amount to the State agency or the Secretary, as the case may be, except that the State agency or the Secretary may waive such repayment if such agency or the Secretary determines, in accordance with guidelines prescribed by the Secretary, that--
 
 
 6
 (A) the payment was made without fault on the part of such individual, and
 
 
 7
 (B) requiring such repayment would be contrary to equity and good conscience.
 
 
 8
 19 U.S.C. Sec. 2315(a)(1).
 
 
 9
 The Secretary originally construed the statute to afford the option of not promulgating regulations pertaining to the waiver of overpayments and directed state agencies not to grant such waivers. When appellants challenged the Secretary's refusal to issue waiver guidelines, the district court prohibited the Secretary and the state agencies from recouping any nonfraudulent overpayments until the Secretary had issued final waiver guidelines. International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, et. al. v. Donovan, 554 F.Supp. 1172, 1173, 1175 (D.D.C.1983). In compliance with the District Court's ruling in UAW, the Secretary issued proposed rules concerning the recovery of TAA overpayments on March 4, 1983. 48 Fed.Reg. 9,444 (1983). After receiving and considering comments on the proposed rule, the Secretary issued final guidelines on February 22, 1986 (51 Fed.Reg. 45,840 (1986)) which became effective January 21, 1987. 20 C.F.R. Sec. 617.55 (1989). Under these regulations, the Secretary or the state agency may waive recoupment of excess TAA benefits when a waiver applicant establishes that (1) she was not at fault for the overpayment, and (2) requiring her to repay the excess benefits would be "contrary to equity and good conscience." 20 C.F.R. Sec. 617.55(a) (1989). The regulations also state that forcing repayment would be contrary to equity and good conscience if such repayment causes "extraordinary financial hardship"--i.e., the inability to obtain minimal necessities for a period of at least thirty days.[1]
 
 
 10
 The guidelines provide inter alia that states need not consider waiver applications for nonfraudulent overpayments at all. The Secretary interprets the language of Sec. 2315(a)(1) that a state agency "may waive" repayment as purely discretionary; states may simply choose not to waive such repayment under any circumstance. 51 Fed.Reg. 45,845 (1986).[2]
 
 
 11
 Appellants challenge the Secretary's regulations on two grounds. First, appellants claim that the Secretary's interpretation of the "may waive" language, which allows states to refuse to entertain all waiver requests, is contrary to Congress' intent. Second, appellants allege that the Secretary's construction of the "equity and good conscience" criteria for waivers is so narrow as to constitute an unlawful reading of that phrase. We reject both challenges.
 
 II. ANALYSIS
 
 12
 A. The Secretary's Interpretation of "May Waive"
 
 
 13
 Appellants first contend that the congressional directive that "the State agency or the Secretary may waive such repayment" is not discretionary and must be interpreted to require states to consider waivers of nonfraudulent overpayments. We disagree.
 
 
 14
 The appropriate standard of review of the Secretary's interpretation of the statute is stated in Chevron USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under Chevron's familiar two-part test, we first look to see if Congress had a clearly discernible intent on the precise question at issue. If so, then that intention must be given effect. If, however, the statute is ambiguous or silent on the issue, then we must determine whether the Secretary's interpretation is "a permissible construction of the statute." Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781-82.
 
 
 15
 Section 2315(a)(1) provides that if an individual receives a nonfault overpayment, "such person shall be liable to repay such amount to the State agency or the Secretary, ... except that the State agency or the Secretary may waive such repayment" if the guidelines are met. 19 U.S.C. Sec. 2315(a)(1) (emphasis added).
 
 
 16
 Appellants contend that the "may waive" phrase, read in context, merely introduces the rest of the sentence which defines the criteria that an applicant must meet to obtain a waiver; i.e., if the guidelines are met, the state agency must grant the waiver. Appellants' interpretation, however, puts an intolerable strain on the ordinary meaning of the text. Effectively, appellants read the word "may" as if it were "shall," despite the usual presumption that "may" confers discretion, while "shall" imposes an obligation to act. See, e.g., Haig v. Agee, 453 U.S. 280, 294 n. 26, 101 S.Ct. 2766, 2775 n. 26, 69 L.Ed.2d 640 (1981) (holding that the language "may grant passports" is discretionary); Southern Railway Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 455, 99 S.Ct. 2388, 2394, 60 L.Ed.2d 1017 (1979) (stating that "the Commission may ... order a hearing" can only be construed as discretionary). Indeed, the Fourth Circuit has upheld the Secretary's interpretation of the term "may waive" as permissive under a similar overpayment provision in the Federal Supplemental Compensation Act, Pub.L. No. 97-248, Title VI, Sec. 606(a)(2)(A), 96 Stat. 702, 705-06 (codified at 26 U.S.C. Sec. 3304 note (1988)). Hicks v. Cantrell, 803 F.2d 789, 793 (4th Cir.1986).[3] The Supreme Court has also interpreted a number of statutory waiver provisions, featuring language similar to Sec. 2315(a)(1), as permissive. Califano v. Yamasaki, 442 U.S. 682, 693-94 n. 9, 99 S.Ct. 2545, 2553-54 n. 9, 61 L.Ed.2d 176 (1979) (interpreting "there shall be no adjustment ... or recovery" from persons qualifying for a waiver, as mandatory, in contrast to permissive language such as an agency "may waive," recovery "may be waived," or recovery "is not required"). The Secretary's discretionary interpretation of the "may waive" language is well-rooted in the plain meaning of Sec. 2315(a)(1).
 
 
 17
 Considering the frequency with which it uses the two words, Congress can be expected to distinguish between "may" and "shall." In this very section, Congress provided that the individual "shall be liable to repay" an overpayment, but that the state agency "may waive such repayment" (emphasis added). We can assume, therefore, that if Congress meant that the state agency "shall waive such repayment" under certain conditions, it would have said so unambiguously. See Hecht Co. v. Bowles, 321 U.S. 321, 326-27, 64 S.Ct. 587, 590, 88 L.Ed. 754 (1944) (holding that the use of "may" and "shall" in the same sentence of a statute implies that each was used purposefully); Persinger v. Islamic Republic of Iran, 729 F.2d 835, 843 (D.C.Cir.), cert. denied, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984) (the use of different language in different parts of the same statute creates a strong inference that different meanings are intended).
 
 
 18
 It is of course true, as appellants remind us, that the ordinarily discretionary overtones of the word "may" "can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." United States v. Rodgers, 461 U.S. 677, 706, 103 S.Ct. 2132, 2149, 76 L.Ed.2d 236 (1983). Appellants accordingly argue here that the legislative history of Sec. 2315(a)(1) indicates that Congress intended "may waive" to be mandatory rather than permissive. However, the legislative history they cite to support this claim is thin. It consists of a few short passages suggesting that Congress sought to "provide" for waivers, surrounded by dozens of pages emphasizing the legislators' focus on cost-cutting. Probably the best support for appellants' contention is the statement in the House Hearings by then-Secretary of Labor Donovan that Sec. 2315(a)(1) "provides for waivers where equitable." House Hearings at 14; see S.REP. No. 139, 97th Cong., 1st Sess. 536 (1981) U.S.CODE CONG. & ADMIN.NEWS 1981, p. 396 [hereinafter S.REP. No. 139] (Donovan's statement reprinted); S. REP. No. 103, 97th Cong., 1st Sess. 6 (1981) [hereinafter S.REP. No. 103] (same). However, "provides for waivers" as easily can mean that the section permits waivers as it can mean that the section requires them. The House reports, on the other hand, contain no such language. Instead, they state that recovery of overpayments is "subject to discretionary waiver by the State agency," lending strong support to the Secretary's interpretation. H.R.REP. No. 143, 97th Cong., 1st Sess. 30 (1981) [hereinafter H.R.REP. No. 143], reprinted in H.R. REP. No. 158, 97th Cong., 1st Sess., vol. III, at 278 (1981) [hereinafter H.R. REP. No. 158]. Secretary Donovan himself, in proposing the legislation, stated that Sec. 2315(a)(1) "broadens the present authority to recover overpayments," as a means of recouping program funds and cutting costs, indicating that cost-cutting was the primary objective of the Administration-sponsored amendments. House Hearings at 12, 14; see S.REP. No. 103 at 6 (same); S.REP. No. 139 at 536 (same); H.R.REP. No. 143 at 30 (same); H.R. REP. No. 158, vol. III, at 278 (same).
 
 
 19
 Nor does the structure or context of the statute outside of Sec. 2315(a)(1) indicate something other than that states were to have discretion whether to allow waivers. Appellants cite Sec. 2315(a)(2), which states that deductions from future benefits may be made "[u]nless an overpayment is otherwise recovered, or waived under paragraph (1)," as evidence that Congress intended that waivers would be available whenever the specified conditions were met. But that is a weak reed indeed. Merely listing waiver as one eventuality that would ward off a deduction does not come even close to suggesting that states are obliged to consider waiver requests. Appellants also assert that Sec. 2315(c), which states that "no repayment may be required, and no deduction may be made, under this section until a determination under subsection (a)(1) of this section by the State agency or the Secretary ... has been made," uniformly requires the opportunity for a hearing on waiver eligibility before an overpayment can be recovered. The Sec. 2315(c) hearing, however, concerns only the issue of whether overpayments were received in the first place, and does not implicate waivers at all.
 
 
 20
 Finally, appellants contend that discretionary waivers are inconsistent with the overall purpose of the statute. Appellants argue that Congress had three goals when it enacted Sec. 2315(a)(1): to broaden recovery of overpayment and provide for waivers where equitable,[4] to create a national rule on recovery and waiver,[5] and to protect program funds. Whether or not broad purposes can trump plain language, we find that Congress expressed a single predominant purpose with respect to Sec. 2315(a)(1): "to broaden recovery of overpayments in order to protect program funds." H.R.REP. No. 143 at 30; H.R.REP. No. 158, vol. III, at 278; see also Letter from Raymond J. Donovan to Thomas P. O'Neill, Jr. and George Bush, March 28, 1981, reprinted in House Hearings at 12. The Secretary's regulations are entirely consistent with that expressed purpose, as well as the overall purpose of the amendments to "make expenditure reductions in accordance with the budget reconciliation process." H.R.REP. No. 143 at 1.
 
 
 21
 In sum, the Secretary's interpretation of Sec. 2315(a)(1) allowing the states an option on entertaining waivers is a permissible one.
 
 
 22
 B. The Secretary's Interpretation of "Equity and Good Conscience"
 
 
 23
 Appellants also challenge those portions of the Secretary's regulations that define the criteria for determining whether recoupment "would be contrary to equity and good conscience," within the meaning of Sec. 2315(a)(1)(B). Examining these regulations under the test stated in the Administrative Procedure Act, 5 U.S.C. Sec. 706, and guided by the Supreme Court's instruction in Chevron, we are satisfied that the Secretary's interpretation is not "arbitrary, capricious, or manifestly contrary to the statute."
 
 
 24
 Section 2315(a)(1) provides that, if the state elects to grant waivers of repayment at all, an individual may qualify where (A) "the [over]payment was made without fault on the part of such individual," and (B) "requiring such repayment would be contrary to equity and good conscience." 19 U.S.C. Sec. 2315(a)(1). Congress did not define "equity and good conscience." Instead, it delegated that responsibility to the Secretary, stating that waiver eligibility should be determined "in accordance with guidelines prescribed by the Secretary." 19 U.S.C. Sec. 2315(a)(1).
 
 
 25
 Under the Secretary's regulations, "financial hardship" is the key. The regulations list these factors:
 
 
 26
 (1) Whether the overpayment was the result of a decision on appeal, whether the State agency had given notice to the individual that the case has been appealed and that the individual may be required to repay the overpayment in the event of a reversal on appeal, and whether recovery of the overpayment will not cause extraordinary and lasting financial hardship to the individual.
 
 
 27
 (2) Whether recovery of the overpayment will not cause extraordinary financial hardship to the individual [where the overpayment was not the result of a decision on appeal]....
 
 
 28
 20 C.F.R. Sec. 617.55(a)(2)(ii)(A). The Secretary defines "extraordinary financial hardship" to exist where
 
 
 29
 recovery of the overpayment would result directly in the individual's loss of or inability to obtain minimal necessities of food, medicine, and shelter for a substantial period of time; and an extraordinary and lasting financial hardship shall be extraordinary as described above and may be expected to endure for the foreseeable future.
 
 
 30
 Sec. 617.55(a)(2)(ii)(C)(1). The regulations further define a "substantial period of time" as thirty days, and the "foreseeable future" as three months. Sec. 617(a)(2)(ii)(C)(2). In calculating the extent of financial hardship, the regulations direct the state agency to consider all potential income and potential cash resources of the individual and the individual's family. Id.
 
 
 31
 Appellants argue that the Secretary's definition is contrary to the plain meaning of the words "equity and good conscience." This claim is a difficult one to make, as "equity and good conscience" has no standardized meaning, but rather is a formulation of flexible and varied application. One standard legal reference defines the term "equity" as "denot[ing] the spirit and habit of fairness, justness, and right dealing which would regulate the intercourse of [individuals]." Black's Law Dictionary 484 (5th ed. 1979), cited in Gilles v. Department of Human Resources Dev., 11 Cal.3d 313, 322 n. 10, 113 Cal.Rptr. 374, 380 n. 10, 521 P.2d 110, 116 n. 10 (1974).
 
 
 32
 It goes without saying that persons of good will may differ widely as to what is "fair," "just" and consistent with "right dealing" in a given context. The fairness and justness of decisions made by this Court, for example, regularly occasion disagreement between successful and unsuccessful litigants. Just so, in the present case. Those who have received money because of the government's error and through no fault of their own may think it not consistent with right dealing to require them to pay the money back, all the more so when they spent the money not knowing they had no entitlement to it. Nonetheless, the Secretary remains responsible to the taxpayers who paid in the funds paid out through bureaucratic error, and to a Congress and Executive determined to make drastic cuts in TAA program spending. See supra at 754, 757. Given the Administration's cost-cutting policy, a policy approved and adopted by Congress, see supra at 757, the Secretary can hardly be taken greatly to task for making waiver of recoupment a tightly limited exception to the pay-it-back main rule.
 
 
 33
 In face of the elastic nature of "equity and good conscience," and the obligation of courts to heed the context in which the words appear, appellants argue that the Secretary's interpretation is unreasonably narrow. Appellants rely, particularly, on the Eighth Circuit's decision in Groseclose v. Bowen, 809 F.2d 502 (8th Cir.1987). In that case, the state sought to recover overpayment of a child's insurance benefits by deducting the overpayment amount from the father's retirement insurance benefits, even though the father did not himself receive, and had no knowledge of, the overpayment. Groseclose, 809 F.2d at 503. The regulation successfully challenged in Groseclose looked to one factor only, detrimental reliance. The father necessarily had not relied on receipts of which he was unaware. The Secretary maintained that, because the father was unable to show detrimental reliance, recoupment was not barred by "equity and good conscience" as defined in the regulations.
 
 
 34
 The Groseclose court looked first to the Social Security Act prescription in question, which expressly prohibited the Secretary from seeking repayment when considerations of "fault" and "equity and good conscience" weighed in favor of granting a waiver. The court further found, upon consulting the relevant legislative history, that Congress intended "to make recovery more equitable ... broaden[ing] the Secretary's authority to waive adjustment[s] or recovery of overpayment." Groseclose, 809 F.2d at 505-06 (quoting 1967 U.S. CODE CONG. & ADMIN.NEWS 2834, 3096). In light of this underlying purpose to facilitate waiver, the court found the Secretary's definition unreasonably narrow, and held that recoupment in the factual scenario at issue was contrary to "equity and good conscience." Id.; accord Quinlivan v. Secretary of Health & Human Servs., 916 F.2d 524 (9th Cir.1990).
 
 
 35
 We do not dwell on the question whether we would follow the Groseclose court were we confronted with the same statute. It suffices to note a highly significant distinction between the Social Security Act command at issue in Groseclose and the provisions of the Trade Act at issue in the present case. While the Groseclose court relied on the evident congressional intent, expressed in the Social Security Act text and history, to facilitate waiver,[6] the legislative history of the Trade Act amendments indicates that Congress passed Sec. 2315(a)(1) in a determined effort to prompt broader recovery of overpayments, and thereby serve the legislators' primary, cost-cutting, objective. See, e.g., House Hearings at 14; S. REP. No. 139 at 536-37. Thus, while the Social Security Act prohibits recoupment of overpayments when inconsonant with "equity and good conscience," the Trade Act initially instructs recoupment of all overpayments, allowing waiver only on the state's election and within limits entrusted to the Secretary's formulation.
 
 
 36
 Our conclusion that the Secretary has not abused the large discretion Congress gave her is supported by the Secretary's implementation of a similar provision in the Federal Supplemental Compensation Act of 1982. That statute authorizes state agencies to require repayment of overpayments, except that the agency "may waive" repayment where the individual is without fault and repayment would be contrary to equity and good conscience. 26 U.S.C. Sec. 3304 note (1988). The Secretary's regulations pursuant to this provision are virtually identical to the regulations at issue here; her regulations for the Compensation Act state that "equity and good conscience" permits dispensation where recovery would prevent the recipient from obtaining minimal necessities of food, medicine, and shelter for thirty days; further, those regulations define "foreseeable future" to mean three months. 49 Fed.Reg. 4,271, 4,281 (1984). This example indicates both that the Secretary's present interpretation of "equity and good conscience" is not a unique one, and that the Secretary appropriately differentiates between statutes that require waiver and those that simply tolerate some forgiveness of indebtedness.
 
 
 37
 Because Congress has made an express delegation of authority to the Secretary, this Court may determine only whether the agency's regulations are rationally connected to the legislative ends. See Chevron, 467 U.S. at 844, 104 S.Ct. at 2782. "When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within the gap left open by Congress, the challenge must fail." Chevron, 467 U.S. at 866, 104 S.Ct. at 2793; accord American Hosp. Ass'n v. Bowen, 834 F.2d 1037 (D.C.Cir.1987); Greensboro Lumber Co. v. FERC, 825 F.2d 518, 522 (D.C.Cir.1987). Under this standard, we need not find that the Secretary has reached an unassailable conclusion based on detailed economic analysis; we need find only that the Secretary's definition is reasonably related to the legislature's design. The Secretary could doubtless have been more generous in her definition of "equity and good conscience" consistent with the statute. However, her present tight rule is reasonably related to Congress' primary intent drastically to reduce the costs of a supplemental unemployment compensation program. For this reason, we find that the Secretary's interpretation of "equity and good conscience" is a permissible, context-driven construction of the 1981 Trade Act alteration.
 
 III. CONCLUSION
 
 38
 As we conclude that the district court correctly determined that the Secretary acted within her discretion, we affirm the judgment.
 
 
 39
 WALD, Chief Judge, dissenting as to Part II-B.
 
 
 40
 I would remand that portion of the regulations which requires proof that the claimant will fall below a minimal subsistence level as to housing, food, and medical care for a "substantial" (defined as 30 days) or "lasting" (defined as 3 months) period of time in order to meet the test of "extraordinary hardship" necessary for waiver of overpayment in nonfault cases. Despite the acknowledgedly broad discretion conferred on the Secretary in setting waiver standards under an "equity and good conscience" delegation from Congress, an unexplained requirement that a claimant and/or his dependents must undergo deprivation of the minimal essentials of life, i.e., food, clothing, and medical care for at least 30 days or, in some cases, 3 months (in the case of a decision on appeal), Sec. 617.55(a)(2)(ii)(A)(1), in order to be eligible for a waiver represents a classic case of an "arbitrary and capricious" regulation. Why--one must ask--is there any necessity for a sustained period of subminimal existence, when the claimant was in fact innocent of any complicity in the overpayment to begin with? Why, even if the Secretary has determined that the regulations shall reflect a no-nonsense attitude toward recovery (and, contrary to the majority's inference, no one disputes the need for a strict pay back policy within reasonable bounds) is it not sufficient that she mandate repayment to the brink of subsistence levels and not beyond? Surely the Secretary could devise regulations that arrange for recovery in installments so as to permit the recipient to stay at least at the bare subsistence level until the debt is repaid. Requiring former employees (and their families) to go without necessary medical help, or without food even for a month--as the regulations appear to contemplate--reeks of a Dickensian callousness, not to be casually imputed to a Congress concerned with "equity and good conscience."
 
 
 41
 Judge Greene suggested in the district court that ordinary welfare and medicaid services might kick in to prevent the abject misery that the regulations would otherwise visit on an inadvertent recipient of overpayments. But even that succor is not clearly derived from the regulations themselves, since in calculating minimal levels of food, shelter, and medical care they require the state to "take into account all potential income." Section 617.55(a)(2)(ii)(C)(2) (emphasis added). Literally read, the regulations could require repayment of the overpayments, as a first priority, even out of other sources of revenue designed to provide the minimal necessities. And of course we cannot be sure these emergency services will always be available within the first 30 days or 3 months of homelessness, starvation, or emergency illness.
 
 
 42
 These regulations give us no clue whatsoever as to the reasons for the draconian 30 days or 3 months sentence to subminimal existence imposed on innocent victims of bureaucratic incompetence. We cannot even begin to guess from the Secretary's statement of basis or purpose or from her counsel's answers at oral argument as to the purpose of the 30 day or 3 month requirement. The basics of administrative law tell us that the Secretary must provide an adequate explanation for her regulations to survive even the most deferential review. Motor Vehicle Manufacturers Assoc. v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Deference may cover a multitude of sins, but surely a court consulting the lowest common denominator definition of "equity and good conscience" has to call a halt somewhere and demand reasons. We have been given none.
 
 
 43
 This would not be the first time a court has rejected an administrator's definition of "equity and good conscience" in overpayment regulations. Several courts have found that the Secretary, or her counterparts in other agencies, has in a single-minded devotion to conserving funds violated the common meaning of the phrase "equity and good conscience." In Groseclose v. Bowen, 809 F.2d 502 (8th Cir.1987), the Eighth Circuit refused to uphold a tunnel-visioned definition of "equity and good conscience" in the Social Security Act, 42 U.S.C. Sec. 404(b) (1988), because it took no account of the economic hardship of the recipient but insisted on proof of detrimental reliance. See 20 C.F.R. Sec. 404.509 (1990). Id. at 505. Although the Groseclose court acknowledged that the phrase in question uses "language of unusual generality," it reasoned that the judicial reviewer is still required to draw upon precepts of justice and morality and not simply confine herself to the rigid rules of the Secretary. Id. at 505 (quoting Gilles v. Department of Human Resources Development, 11 Cal.3d 313, 322, 113 Cal.Rptr. 374, 521 P.2d 110 (1974)); see also Marchese v. Secretary of Health and Human Services, 690 F.Supp. 162, 164 (W.D.N.Y.1988) (finding that the court is not bound by the Secretary's interpretation of "equity and good conscience" under the Social Security Act regulations); Rosofsky v. Schweiker, 523 F.Supp. 1180, 1188 (E.D.N.Y.1981) (same).
 
 
 44
 Just recently, the Ninth Circuit rejected the Secretary of Health and Human Services" definition of "equity and good conscience" for nonfault overpayments under the Social Security Act, on the grounds that it failed to consider the claimant's economic hardship.
 
 
 45
 We conclude that the meaning of the phrase, "against equity and good conscience," cannot be limited to the three narrow definitions set forth in the Secretary's regulation [where the claimant changed his or her position for the worse, relinquished a valuable right, or lived in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment]. Congress intended a broad concept of fairness to apply to waiver requests, one that reflects the ordinary meaning of the statutory language and takes into account the facts and circumstances of each case.[1]
 
 
 46
 Quinlivan v. Sullivan, 916 F.2d 524, 527 (9th Cir.1990). In Quinlivan, the claimant received overpayments of disability payments for two years while in prison. When Quinlivan was released from prison he had no material goods, no means of transportation, and no income due to his inability to work because of psychological impairments. He spent his accumulated savings, including the overpayment, on clothes, a used truck, and daily living expenses. The Ninth Circuit found, under this set of facts, that requiring repayment of the overpayments would be against "equity and good conscience." Id. at 527.
 
 
 47
 Similarly, in this case, innocent recipients of overpayments under the Trade Act Amendment would be required to spend all of their savings and demonstrate no prospect of income or any other form of assistance sufficient to maintain minimal levels of subsistence for at least 30 days before qualifying for a waiver of overpayments. I would find, like the Ninth Circuit, that result cannot be squared with "equity and good conscience."
 
 
 48
 No other regulation construing the statutory "equity and good conscience" standard for waiver of overpayments requires 30 days to 3 months exile into abject poverty. The only precedent I can find is the unpublished guidelines for determining waiver of overpayments under the Federal Supplemental Compensation Act ("FSC"), 26 U.S.C. Sec. 3304 note (1982). See 49 Fed.Reg. 4271, 4281 (1984) (Unemployment Insurance Program Letter, No. 7-84 (December 29, 1983)). This letter instructs states to grant waivers where repayment would be against "equity and good conscience" and defines that phrase in the same way the Secretary does here. But no officially-published regulation requires the kind of extreme financial hardship involved here,[2] or even sustained subminimal existence for any period of time.
 
 
 49
 The majority relies on the difference between the Trade Act, which only "permits" waivers, and other statutes which "require" waivers where repayment would violate the tenets of "equity and good conscience" to bolster its conclusion that these regulations are in accord with Congress' intent. On that theory, whenever Congress mandates waivers on an "equity and good conscience" basis, it intends a broader definition of that term than when it merely permits a state to offer waivers on the same grounds. That argument frankly eludes me. Congress never indicated any such differential intent, explicitly or implicitly. Among the regulations construing several other statutes that merely "permit" waiver of overpayments, none requires the type of sustained extraordinary hardship that the Secretary forces upon the innocent recipient of erroneously paid Trade Act funds.[3]
 
 
 50
 It is of course true, as my colleagues point out, that a state may do away with waiver altogether; so, the argument goes, why can it not reduce the standards of waiver to a 1-3 month subminimal level? I do not find this argument controlling either, because, while the state in many circumstances has an option whether to grant benefits--or waivers--at all, if it does so it must act not only constitutionally but rationally. Speiser v. Randall, 357 U.S. 513, 518, 78 S.Ct. 1332, 1338, 2 L.Ed.2d 1460 (1958). That is, the conditions it attaches to its grant of waiver must not only be related to the purpose of the statute but in accord with its terms. In this case that means that the conditions must reflect "equity and good conscience." And the phrase "equity and good conscience" has never previously been construed by any court, or any agency in its regulation, to require an innocent recipient to plunge into subminimal existence for extended periods of time.
 
 
 51
 Furthermore, I cannot agree with the majority that the congressional formula of "equity and good conscience" meant principally to signal equity to the taxpayers, who furnished the funds erroneously paid to the recipients, rather than equity to the innocent recipients themselves. Nothing in the legislative history of the Trade Act suggests that Congress intended that single-minded focus. If it had, then why provide for waiver of nonfault overpayments at all? The fact is that Congress did specifically distinguish between two types of overpayments in the law--fault and nonfault--and provided for waivers only in the nonfault situation. In imputing to Congress an intent hellbent on recovering all overpayments to the taxpayers' coffers, regardless of the recipient's economic condition, the majority improperly conflates the two kinds of overpayments.
 
 
 52
 In sum and in candor, these regulations fail any test of "equity and good conscience" however defined;[4] they fail the test of common decency, and they certainly do not "catch the conscience of the king." W. Shakespeare, Hamlet, Act II, sc. 2. I would therefore remand them to the Secretary for modification or an explanation of why a requirement of sustained subminimal existence in the case of nonfraudulent recipients of overpayments accords with any rational concept of "equity and good conscience."
 
 
 
 [1]
 The regulations state, in pertinent part:
 (1) If a State agency or a court of competent jurisdiction determines that any individual has received any payment under the Act and this Part 617 to which the individual was not entitled, ... such individual shall be liable to repay such amount to the State agency, and the State agency shall recover any such overpayment in accordance with the provisions of this Part 617; except that the State agency may waive the recovery of any such overpayment if the State agency determines, in accordance with the guidelines prescribed in paragraph (a)(2) of this section, that:
 (i) The payment was made without fault on the part of such individual; and
 (ii) Requiring such repayment would be contrary to equity and good conscience.
 ....
 (2)(ii)(A) In determining whether equity and good conscience exists for purposes of paragraph (a)(1)(ii) of this section, the following factors shall be considered:
 (1) Whether the overpayment was the result of a decision on appeal, whether the State agency had given notice to the individual that the case has been appealed and that the individual may be required to repay the overpayment in the event of a reversal on appeal, and whether recovery of the overpayment will not cause extraordinary and lasting financial hardship to the individual.
 (2) Whether recovery of the overpayment will not cause extraordinary financial hardship to the individual [where there is no appeal]....
 (C)(1) ... [A]n extraordinary financial hardship shall exist if recovery of the overpayment would result directly in the individual's loss of or inability to obtain minimal necessities of food, medicine, and shelter for a substantial period of time; and an extraordinary and lasting financial hardship shall be extraordinary as described above and may be expected to endure for the foreseeable future.
 (2) ... [A] substantial period of time shall be [thirty] days, and the foreseeable future shall be at least three months.... In making these determinations, the State agency shall take into account all potential income of the individual and the individual's family and all cash resources available or potentially available to the individual and the individual's family in the time period considered.
 
 
 [20]
 C.F.R. Sec. 617.55(a) (1989)
 
 
 [2]
 The Secretary stated: "It has been determined that the word 'may' leaves to each State's decision the election whether or not to waive overpayments." Id
 
 
 [3]
 Cf. Tongol v. Usery, 601 F.2d 1091, 1096 (9th Cir.1979) (holding that regulations prohibiting states from considering waivers under the Emergency Unemployment Compensation Act of 1974 (Federal Supplemental Benefits program ("FSB")), Pub.L. No. 93-572, 88 Stat. 1869 (1974), were inconsistent with Sec. 102(d)(2) of the Act, which states "the terms and conditions of State law ... apply to claims for compensation" and recoupment of overpayments); Martinez v. Marshall, 573 F.2d 555, 558 (9th Cir.1977) (same, under the Emergency Compensation and Special Unemployment Assistance Extension Act of 1975 ("SUA"), Pub.L. No. 94-45, Sec. 203(b), 89 Stat. 236, 241 (1975)). Unlike FSB and SUA, the Secretary's waiver regulations here do not prohibit states from considering waivers, they merely allow the states to refuse to consider waivers if they so choose. Also, the amendments substitute a national rule for recovery of overpayments for the state law which applies under the FSB and SUA
 
 
 [4]
 As discussed supra, the brief mention in the Senate Reports that Sec. 2315(a)(1) "provides for waivers where equitable" does not contradict the discretionary nature of the waiver provision. See S.REP. No. 103 at 6; S. REP. No. 139 at 536; House Hearings at 14. That statement can most plausibly be read to explain that the amendments permit such waivers
 
 
 [5]
 The only reference to a "national rule" is in the House Reports, which describe Sec. 2315(a)(1) as substituting a "national rule for recovery of non-fraudulent overpayments." H.R.REP. No. 143 at 30; H.R.REP. No. 158, vol. III, at 278 (emphasis added). They make no mention of waivers as part of that national rule. Appellants conclude nonetheless that the "national rule" mentioned in the House Reports must include waivers, since recovery and waiver go hand in glove, a proposition for which we see no evidence. But even if Congress did intend a national rule on recovery and waiver, the Secretary's regulations are consistent with that intent. The regulations replace the ad hoc criteria applied to waiver applications by the states and require states to apply uniform, national guidelines when they opt to grant waivers
 
 
 [6]
 Similarly, the court in Quinlivan pointed to the demonstrated congressional intent "to broaden the availability of waiver." Id. at 526. See also id. at 527 (relying on "unusual set of circumstances" in which claimant had to spend the Social Security Act overpayment before he could qualify for state general assistance benefits)
 
 
 [1]
 Similarly, the regulations for the Veterans' Administration Act, 38 U.S.C. Sec. 3102 (1989), permit waiver of overpayments of veterans' benefits "when the facts and circumstances indicate a need for reasonableness and moderation in the exercise of the Government's rights." 38 C.F.R. Sec. 1.965 (1989)
 
 
 [2]
 The Federal Employee's Compensation Act, 5 U.S.C. Sec. 8129(b), includes two criteria in its "equity and good conscience" determination: (1) "severe" financial hardship or (2) detrimental reliance. "Severe" financial hardship is defined as the inability to obtain "current ordinary and necessary living expenses." 20 C.F.R. Sec. 10.322. This definition is not as restrictive as the Trade Act regulations which require "extraordinary" financial hardship, which is defined as the inability to obtain "minimal necessities of food, medicine, and shelter for a substantial period of time [at least 30 days]." 20 C.F.R. Sec. 617.55(a)(2)(ii)(B)
 
 
 [3]
 See, e.g., 10 U.S.C. Sec. 2774(a), 4 C.F.R. Secs. 91-93 (1990) (military pay); 5 U.S.C. Sec. 8129, 20 C.F.R. Secs. 10.321-323 (1989) (waiving recovery of overpayments to employees under the Federal Employees Compensation Act); 10 U.S.C. Secs. 1442, 1454, 32 C.F.R. Sec. 48.506(b) (1989) (servicemen's family annuity and survivors' benefits); 42 U.S.C. Sec. 1383(b), 20 C.F.R. Sec. 416.554 (1989) (supplemental security income)
 
 
 [4]
 See, e.g., O. Goldsmith, The Vicar of Wakefield, ch. 13 (1766) ("Conscience is a coward, and those faults it has not strength enough to prevent it seldom has justice enough to accuse.")